Docket No. 98034–Agenda 20–November 2004.

GLEN BLUE, Appellee, v. ENVIRONMENTAL ENGINEERING, INC., 
et al.
 (Environmental Engineering, Inc., Appellant).

Opinion filed April 7, 2005.

JUSTICE THOMAS delivered the opinion of the court:

This case presents the questions of whether (1) the risk-utility analysis normally used in strict products liability cases is applicable to defective product design cases involving only a negligence theory of recovery; and (2) a special interrogatory, asking if the danger posed by the product was open and obvious, was properly read to the jury.

Plaintiff, Glen Blue, filed a complaint in the circuit court of Cook County against a number of defendants, including Environmental Engineering, Inc., a wholly owned subsidiary of Browning-Ferris Industries, Inc. (hereinafter defendant or Browning), alleging theories of strict liability and negligence in connection with injuries plaintiff sustained when he stuck his foot into a trash compactor. The strict liability counts were dismissed prior to trial because they were filed beyond the applicable limitations period and the statute of repose. 735 ILCS 5/13–213(b) (West 1994). The jury returned a general verdict against Browning and third-party defendant John M. Smyth Company (Smyth) on the negligence counts, but found plaintiff’s contributory negligence to be 32%. The jury answered in the affirmative a special interrogatory submitted by Browning that asked if the risk of injury in sticking a foot into a moving compactor was open and obvious. The trial court found that the jury’s verdict was inconsistent with its answer to the special interrogatory. It therefore vacated the jury’s judgment for plaintiff and entered judgment on the special interrogatory for Browning. The appellate court reversed the judgment entered in favor of defendants and reinstated the jury’s verdict, but remanded the cause for reconsideration of the parties’ other posttrial motions. 345 Ill. App. 3d 455. We allowed Browning’s petition for leave to appeal (177 Ill. 2d R. 315).

BACKGROUND

The evidence showed that in 1975, Browning sold a heavy duty trash compactor to Smyth. Browning installed the compacter in the Downers Grove, Illinois, warehouse of Smyth. The compactor was generally used by Smyth employees to compact cardboard boxes, furniture, and wooden skids. Browning would empty the compactor when full upon Smyth’s requests. The machine consisted of a ram which slid back and forth to compact the items placed in the chamber. A user had the option of turning it on and off after each compaction or running it in a continuous mode. The control panel of the compactor contained a power switch and there was a pull cord hanging over the mouth of the compactor that could be used to stop the machine.

In 1991, Smyth installed a gate at the mouth of the compactor, which was designed to turn off the compactor when opened. The bars of the gate were covered by wire mesh, but the meshing was removed by Smyth employees because it was regularly knocked off by boxes as they were pushed back by the ram.

Plaintiff began working in Smyth’s Downers Grove warehouse in 1990. He did not receive any training on the compactor, but had operated it a number of times and had watched others do so also. According to plaintiff, the compactor often jammed and it was the usual practice of employees, including the warehouse supervisor, Phillip Polizzi, to push refuse down into the compactor with a foot while the compactor was moving. Plaintiff acknowledged, however, that he had been told not to put his arms or legs into the moving machine. Polizzi and assistant warehouse supervisor Andrew Banda denied that they ever put their arms or legs into the moving compactor. They noted that if they had ever observed an employee doing so, they would issue that employee a written citation.

On the day of the accident, plaintiff was assigned to operate the trash compactor. Plaintiff testified that he informed Banda that the compactor was full and would not operate properly. Banda told him to continue operating the machine because the loading dock needed to be cleared of refuse. Banda, however, testified that plaintiff did not report that the compactor was full.

Plaintiff further testified that after he placed a large sofa box into the compactor, it stopped and would not crush the box. While the compactor was running in the continuous mode, plaintiff placed his leg through the bars of the closed gate and pushed the box down with his foot so that it would be grabbed by the ram. Plaintiff’s foot became caught in the box and plaintiff was pulled into the compactor as the ram took hold of the box. He was subsequently hit by the ram approximately three times, breaking his pelvis, leg and foot.

Marvin Salzenstein, a consulting engineer specializing in machine design and safety, testified on behalf of plaintiff at trial. He stated that he was familiar with the compactor in question and how it functioned. He described its features and noted that this kind of compactor was being sold and manufactured in 1975. He did not testify as to whether or not the machine complied with industry standards at the time it was manufactured. Instead, he testified that the machine could have been made safe by incorporating certain safety features that would have been technologically available in 1975. He noted that the machine should have incorporated a sustained manual pressure control to ensure that a person is not loading while operating the machine, but is instead at the control panel of the compactor at the time of operation. The other alternative would have been to install an “interlock guard” over the point of operation so that no one could reach inside the compactor while it was running. Salzenstein criticized the machine’s design for having a continuous operation mode and for not having an emergency shut-off device within easy reach of the operator. He noted that a gate was added to the compactor by Smyth, but this was not sufficient because it did not prevent a person from reaching through the gate into the compactor. Salzenstein opined that the machine was negligently designed.

Plaintiff”s complaint alleged strict liability and negligence theories. The strict liability count was dismissed, but count IV, a negligence count, was submitted to the jury. That count essentially alleged that Browning breached a duty to distribute a machine that was reasonably safe for its intended purpose, and that Browning’s acts or omissions proximately caused plaintiff’s injury. In response, Browning asserted various affirmative defenses, including that plaintiff assumed the risk of his injury by sticking his foot in the compactor, plaintiff misused the compactor thereby proximately causing his own injury, and that plaintiff was contributorily negligent.

The trial court instructed the jury that it could find defendant negligent if it found that plaintiff was injured and that the injury was proximately caused by the acts or omissions of defendant. The court further instructed that if plaintiff’s own negligence contributed to his injury, then it must find that plaintiff was contributorily negligent and reduce any recovery accordingly. If the jury found plaintiff’s contributory negligence to be more than 50% of the total proximate cause of the injury, plaintiff would be barred from any recovery. The jury was also given a special interrogatory, over plaintiff’s objection, which asked, “Was the risk of injury by sticking a foot over or through a gate into a moving compactor open and obvious?” Although it answered this interrogatory in the affirmative, the jury returned a general verdict for plaintiff and against Browning and Smyth. It awarded plaintiff $1,120,588, attributing 33% of the negligence to Browning, 35% to Smyth and 32% to plaintiff, thereby reducing plaintiff’s recovery to $762,000.

Browning filed two separate posttrial motions. The first was a motion for judgment on the special interrogatory, arguing that the jury’s response to it controlled over the general verdict. The second posttrial motion was filed over two weeks later and sought the following relief: (1) a judgment 
n.o.v.
 on the basis that Smyth altered the machine subsequent to its sale by installing safety devices, which fully corrected the allegedly dangerous condition that may have existed at the time of sale; (2) a new trial, arguing that the jury’s verdict was against the manifest weight of the evidence because plaintiff admitted that he knew “the compactor was used for crushing” and “therefore, was dangerous”; and (3) a new trial on the basis that the trial court erred in refusing to allow certain motions 
in limine
 filed by Browning and that the trial court erred in refusing to admit two jury instructions tendered by Browning.

The trial court granted Browning’s first posttrial motion and entered judgment in favor of defendants. In so doing, it found that the special interrogatory related to the ultimate issue of fact and that the jury’s answer to it was inconsistent with the general verdict. The trial court also conditionally denied Browning’s posttrial motion for judgment 
n.o.v.
 and for a new trial.

Plaintiff appealed, arguing that the interrogatory was improperly given, and that even if it was proper, the jury’s response was not inconsistent with the general verdict. The appellate court agreed with both of plaintiff’s assertions, reversed the judgment on the special interrogatory, and reinstated the jury’s verdict. 345 Ill. App. 3d at 470. Specifically, it found that an affirmative answer to the question of whether a danger is open and obvious in a negligence action (not premised on a duty to warn) does not necessarily resolve the ultimate issue without consideration of how the doctrine compares to other matters in the case. Precedent is clear that where the danger is open and obvious, there is no duty to warn of that danger. 345 Ill. App. 3d at 464-65. However, where a plaintiff alleges that a product was negligently designed, the open and obvious nature of the risk does not serve as an absolute bar. 345 Ill. App. 3d at 464. The appellate court relied upon 
Wortel v. Sommerset Industries, Inc.
, 331 Ill. App. 3d 895 (2002), which held that the open and obvious nature of the risk is not a 
per se 
bar to recovery in a design defect case involving strict liability. The appellate court concluded that the rationale of 
Wortel
 should be extended to negligence cases involving design defects. 345 Ill. App. 3d at 466.

According to the appellate court, 
Wortel
 acknowledged that prior to 1990, the sole test used to determine the existence of a design defect was the “consumer expectation test.” 345 Ill. App. 3d at 466. This test provides that “ ‘strict liability applies 
only
 when a product is “ ‘dangerous to an extent beyond that which would be contemplated by the ordinary [person] ***, with the ordinary knowledge common to the community as to its characteristics.’ ” ’ ” (Emphasis in original.) 345 Ill. App. 3d at 466, quoting 
Wortel
, 331 Ill. App. 3d at 901, quoting 
Hunt v. Blasius
, 74 Ill. 2d 203, 211-12 (1978), quoting Restatement (Second) of Torts §402A, Comment 
i
, at 352 (1965). Under the consumer-expectation test, the open and obvious nature of a danger would bar recovery where the injury was the result of the inherent properties of the product which were obvious to anyone who came into contact with it. 345 Ill. App. 3d at 466, citing 
Wortel
, 331 Ill. App. 3d at 901. But in 1990, this court decided 
Lamkin v. Towner
, 138 Ill. 2d 510 (1990), which held that a plaintiff may demonstrate a manufacturer’s 
strict
 liability for defective design by an alternative method, known as the risk-utility test. According to the appellate court, under this test, once a plaintiff introduces evidence that the product’s design proximately caused his injury, the burden shifts to the defendant, who must “ ‘prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs.’ ” 345 Ill. App. 3d at 466, quoting 
Lamkin
, 138 Ill. 2d at 529. In determining the adequacy of a product’s design under this test, the jury may consider the gravity of the danger posed by the challenged design, the likelihood that the danger would occur, the mechanical feasibility of a safer alternative design, and the adverse consequences to the product and the consumer that would result from an alternative design. 345 Ill. App. 3d at 466-67, citing 
Wortel
, 331 Ill. App. 3d at 904. Under the risk-utility test, the open and obvious nature of the risk is just one factor to be considered within this range of considerations and it will only serve to bar the liability of the manufacturer where it outweighs all other factors to be considered in weighing the inherent risks against the utility of the product as manufactured. 345 Ill. App. 3d at 467. Because the interrogatory left open these considerations, the court found that it did not resolve an ultimate issue of fact and therefore should not have been given. 345 Ill. App. 3d at 468.

Finally, the appellate court found that plaintiff presented sufficient evidence to raise the risk-utility issue. 345 Ill. App. 3d at 469. This evidence included the testimony of a consulting engineer that showed that (1) the compactor was negligently designed because it should have incorporated one or more safety features available at the time, and (2) the safety feature used (a gate) did not prevent a person from reaching into the machine, so it was still unreasonably dangerous. 345 Ill. App. 3d at 469-70. Under the appellate court’s view of the risk-utility test, the burden then shifted to 
defendant
 to show that, on balance, the benefits of the challenged design outweighed the risk inherent in the design. 345 Ill. App. 3d at 470. Because there was no evidence in the record that defendant presented such evidence, “a reasonable hypothesis” existed to construe the jury’s answer to the interrogatory consistently with its general verdict. 345 Ill. App. 3d at 470. The appellate court reinstated the jury’s verdict and remanded for reconsideration of the parties’ posttrial motions. 345 Ill. App. 3d at 470-71.

ANALYSIS

Browning, as appellant, argues before this court that (1) the risk-utility test does not apply to negligence cases; (2) even in strict liability cases, the risk-utility test need not be applied where the product is a simple one and the danger posed by it is obvious; (3) even if the risk-utility test can be applied to negligence cases, it should not be considered here because plaintiff did not raise it in the trial court and no jury instructions were submitted on the matter; and (4) judgment was properly entered on the special interrogatory because the jury’s answer resolved an ultimate issue of fact and was irreconcilably in conflict with the general verdict.

Plaintiff responds that (1) the risk-utility test should be applied to this negligence case; (2) the simple-machine exception does not apply because the trash compacter was not simple, and in any event, the simple-machine test should be rejected as unsound; and (3) this court should find that the “deliberate encounter” exception to the open and obvious doctrine employed in premises liability cases should apply here. Relying upon 
LaFever v. Kemlite Co.
, 185 Ill. 2d 380 (1998), plaintiff argues that the deliberate-encounter exception should be invoked because he was required to perform his job with the machine. He maintains that this fact supports the jury verdict and shows that the special interrogatory was improperly given because the jury was not asked to resolve any possible exceptions to the open and obvious rule. Thus, plaintiff claims, the interrogatory could not possibly have resolved an ultimate issue in the case because, even if the danger was patently obvious as the jury found, there are still exceptions to the rule that make the jury’s answer consistent with the general verdict.

I. Whether the Risk-Utility Test Applies

To resolve the above-mentioned issues, we begin our analysis with a discussion of the differences and similarities between a products liability case based on a negligence theory and a strict products liability case with its two subsets: manufacturing defects and design defects. Historically, the focus of products liability law was initially on manufacturing defects. Restatement (Third) of Torts: Products Liability §1, Comment 
a
, at 6 (1998). A manufacturing defect differs from a design defect in that the former occurs in only a small percentage of units in a product line, whereas the latter arises when the specific unit conforms to the intended design but the intended design itself, or its sale without adequate instructions or warnings, renders the product not reasonably safe. Restatement (Third) of Torts: Products Liability §1, Comment 
a
, at 6 (1998). In the 1960s, courts began to recognize that a commercial seller of a defective product should be liable in tort for harm caused by a defect in the product regardless of the plaintiff’s ability to maintain a traditional negligence or warranty action. See, 
e.g.
, 
Suvada v. White Motor Co.
, 32 Ill. 2d 612 (1965); see also Restatement (Third) of Torts: Products Liability §1, Comment 
a
, at 6 (1998). Courts began imposing liability on the manufacturer and seller even if the quality control in producing the defective product was reasonable. Restatement (Third) of Torts: Products Liability §1, Comment 
a
, at 6 (1998). The American Law Institute set forth this principle in section 402A of the Second Restatement of Torts, which provides as follows:

“(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.” Restatement (Second) of Torts §402A, at 347-48 (1965).

Section 402A was adopted by this court in 
Suvada v. White Motor Co.
, 32 Ill. 2d 612, 621 (1965), a manufacturing defect case. The test set forth in section 402A came to be known as the consumer-expectation test (
Hansen v. Baxter Healthcare Corp.
, 198 Ill. 2d 420, 433 (2002)), or consumer-contemplation test (
Todd v. Societe Bic, S.A.
, 21 F.3d 1402, 1406 (7th Cir. 1994)), and has been articulated by Illinois courts as follows: “A product is ‘unreasonably dangerous’ when it is ‘dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.’ ” 
Lamkin
, 138 Ill. 2d at 528, quoting 
Palmer v. Avco Distributing Corp.
, 82 Ill. 2d 211, 216 (1980), quoting Restatement (Second) Torts §402A, Comment 
i
, at 352 (1965); see also 
Hunt v. Blasius
, 74 Ill. 2d 203, 211-12 (1978). In 
Hunt
, this court applied the consumer-expectation test to prevent liability in a design defect case, noting that injuries are “not compensable in products liability if they derive merely from those inherent properties of a product which are obvious to all who come into contact with the product.” 
Hunt
, 74 Ill. 2d at 211.

By the early 1970s, some courts sought to impose liability without fault for design defects and defects due to inadequate instructions and warnings under the principles enunciated in section 402A. Restatement (Third) of Torts: Products Liability §1, Comment 
a
, at 6 (1998); see, 
e.g.
, 
Anderson v. Hyster Co.
, 74 Ill. 2d 364 (1979). It became apparent, however, that section 402A, created to address manufacturing defects, did not adequately cover design defects or defects based on inadequate warnings. Restatement (Third) of Torts: Products Liability §1, Comment 
a
, at 6-7 (1998). This court understood the problem and recognized a second, alternative test for proving a strict products liability cause of action involving a defective design. The second test eventually became known as the risk-utility or risk-benefit test. 
Hansen v. Baxter Healthcare Corp.
, 198 Ill. 2d 420 (2002). The California Supreme Court is generally credited with creating the risk-utility test in 
Barker v. Lull Engineering Co.
, 20 Cal. 3d 413, 573 P.2d 443, 143 Cal. Rptr. 225 (1978), to address the restrictions of the consumer-contemplation test. 
Todd
, 21 F.3d at 1409. It was first broached by an Illinois court in 
Anderson v. Hyster Co.
, 74 Ill. 2d 364 (1979), which affirmed a jury verdict for the plaintiff, finding that the evidence presented was sufficient to prove that the defendant manufacturer defectively designed a forklift that caused the plaintiff’s injuries. In so doing, 
Anderson
 noted the following:

“A manufacturer is held to the degree of knowledge and skill of experts [citation] and is under a nondelegable duty to make a product which is reasonably safe [citation]. That a product was not reasonably safe by reason of defective design may be proved, 
inter alia
, by evidence of the availability and feasability of alternative designs at the time of its manufacture, or that the design used did not conform with the design standards of the industry, design guidelines provided by an authoritative voluntary association, or design criteria set by legislation or governmental regulation. 
Anderson
, 74 Ill. 2d at 368.

The rationale of 
Anderson
, which appears to partially set forth the risk-utility test, was followed up with decisions in 
Kerns v. Engelke
, 76 Ill. 2d 154 (1979), 
Lamkin v. Towner
, 138 Ill. 2d 510 (1990), and 
Hansen v. Baxter Healthcare Corp.
, 198 Ill. 2d 420 (2002), all of which involved defective product designs. 
Hansen
 and 
Lamkin
 made clear that the risk-utility test represented an additional way a plaintiff could prove a strict liability claim for defective design, stating the two alternative tests as follows:

“ ‘A plaintiff may demonstrate that a product is defective in design, so as to subject a retailer and a manufacturer to strict liability for resulting injuries, in one of two ways: (1) by introducing evidence that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner or (2) by introducing evidence that the product’s design proximately caused his injury and the defendant fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs.’ ” 
Hansen
, 198 Ill. 2d at 433, quoting 
Lamkin
, 138 Ill. 2d at 529.

Hansen
 also stated that a plaintiff may demonstrate that a product is unreasonably dangerous because of a design defect by presenting evidence of an alternative design that would have prevented the injury and was feasible in terms of cost, practicality and technology. 
Hansen
, 198 Ill. 2d at 436.

The American Law Institute has now recognized the inadequacy of section 402A to address claims of defective design and defects based on inadequate instructions and warnings. Accordingly, it adopted new rules reflecting the developments in products liability law as expressed in cases such as 
Lamkin
. Section 2 of the Third Restatement of Torts: Products Liability provides:

“A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:

(a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;

(b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;

(c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.” Restatement (Third) of Torts: Products Liability §2, at 14 (1998).

Comment 
a
 of section 1 of the Third Restatement discusses the relationship of the above standards with the concepts of negligence and strict liability. According to that comment, “Sections 2(b) and 2(c) rely on a reasonableness test traditionally used in determining whether an actor has been negligent. See Restatement, Second, Torts §§291-293. Nevertheless, many courts insist on speaking of liability based on the standards described in §§2(b) and 2(c) as being ‘strict.’ ” Restatement (Third) of Torts: Products Liability §1, Comment 
a
, at 7 (1998). Among the reasons offered for this preference is that

“some courts are concerned that a negligence standard might be too forgiving of a small manufacturer who might be excused for its ignorance of risk or for failing to take adequate precautions to avoid risk. Negligence, which focuses on the conduct of the defendant-manufacturer, might allow a finding that a defendant with meager resources was not negligent because it was too burdensome for such a defendant to discover risks or to design or warn against them. The concept of strict liability, which focuses on the product rather than the conduct of the manufacturer, may help make the point that a defendant is held to the expert standard of knowledge available to the relevant manufacturing community at the time the product was manufactured.” Restatement (Third) of Torts: Products Liability §1, Comment 
a
, at 7 (1998).

The Institute distinguished between design defects and manufacturing defects, noting that the same rationale for imposing strict liability in manufacturing defect cases does not apply to design defects. Rather, section 2(b) and (c) achieve the same general objectives as does liability predicated on negligence. Restatement (Third) of Torts: Products Liability §2, Comment 
a
, at 16 (1998). The Institute mentions the reasonableness test traditionally used in ordinary negligence cases (see Restatement (Second) of Torts §§291 through 293 (1965)) and maintains that sections 2(b) and (c) are founded upon it. Section 291 of the Second Restatement provides as follows:

“Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done.” Restatement (Second) of Torts §291, at 54 (1965).

This test is very similar to the risk-utility test and both are in turn similar to the factors an Illinois court must consider in determining whether a duty exists in a given case: (1) the reasonable foreseeability of injury; (2) the reasonable likelihood of injury; (3) the magnitude of the burden that guarding against the injury places on the defendant; and (4) the consequences of placing that burden on the defendant (see 
e.g.
, 
Bucheleres v. Chicago Park District
, 171 Ill. 2d 435, 450 (1996)). Accordingly, it has been observed that the kind of hindsight analysis inherent in the risk-utility test, which requires juries to weigh the risk inherent in the product’s design, has all the earmarks of determining negligence. 
Todd
, 21 F.3d at 1409 n.6.

Illinois cases considering a cause of action for defective products liability sounding in negligence rather than strict liability are rare, probably because it appears to plaintiffs that it is easier to prove the strict liability count. When speaking of a 
manufacturing
 defect, this is certainly true, as liability for such defects can no doubt be considered strict. A manufacturer is liable for such defects no matter how adequate and careful its quality control may have been. However, a 
design
 defect suit is more akin to a negligence claim. Any difference between the two would lie in the fault concept. See 
Todd
, 21 F.3d at 1412; 
Phillips v. United States Waco Corp.
, 163 Ill. App. 3d 410, 417 (1987). In a negligence defective design case, the focus is on the conduct of the defendant, but in a strict liability defective design case, the focus is on the product. See 
Coney v. J.L.G. Industries, Inc.
, 97 Ill. 2d 104, 117-18 (1983); 
Baltus v. Weaver Division of Kidde & Co.
, 199 Ill. App. 3d 821, 829 (1990); 
Carrizales v. Rheem Manufacturing Co.
, 226 Ill. App. 3d 20, 36-37 (1991).
(footnote: 1) That there is a distinction between the two kinds of claims is borne out by the few appellate court decisions that have considered products liability claims sounding in negligence. Those courts have held that a plaintiff raising a negligence claim must do more than simply allege a better design for the product; he must plead and prove evidence of a standard of care by which to measure a defendant’s design and establish a deviation from that standard. 
Carrizales
, 226 Ill. App. 3d at 37; 
Baltus
, 199 Ill. App. 3d at 831; see also 
Ferentchak v. Village of Frankfort
, 105 Ill. 2d 474, 480 (1985). Thus, to establish a negligence claim for a defective design of a product, a plaintiff must prove that either (1) the defendant deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed, or (2) that the defendant knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and defendant failed to warn of its dangerous propensity. 
Carrizales
, 226 Ill. App. 3d at 36; 
Baltus
, 199 Ill. App. 3d at 830. This is consistent with section 398 of the Second Restatement of Torts, which provides that “[a] manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability *** [for] failure to exercise reasonable care in the adoption of a safe plan or design.” Restatement (Second) of Torts §398, at 336 (1965).

We believe that 
Carrizales
 and 
Baltus
 correctly state the appropriate standard for negligence cases involving defective products and that the risk-utility test does not apply to such cases. The negligence analysis set forth in 
Carrizales
 and 
Baltus
 correctly focuses on the conduct of the defendant and correctly makes a differentiation in the fault concept between negligence and strict liability. Again, we note that the standard expressed in these cases is similar, but not identical to, the standard to be applied in strict products liability actions involving defective design. In contrast to negligence’s focus on the standard of care established by other manufacturers in the industry, strict liability focuses on the product and only requires proof that the benefits of the challenged design do not outweigh the risk of danger inherent in such designs, that the alternative design would have prevented the injury, and that the alternative design was feasible in terms of cost, practicality and technology. See 
Hansen
, 198 Ill. 2d at 436. In a strict liability setting, if plaintiff introduces evidence that a reasonable alternative design could have been practically adopted, a trier of fact may conclude that the product was defective notwithstanding that the proposed design was not adopted by any manufacturer, or even considered, at the time of sale. Restatement (Third) of Torts: Products Liability §2, Comment 
d
, at 19 (1998). Of course, a plaintiff can also prove his strict liability claim by presenting proof that the defendant deviated from the industry standard (
Anderson
, 74 Ill. 2d at 368), and in that case it would subsume the risk-utility standard.

Having determined the appropriate criteria to assess plaintiff’s negligence claim, and in particular that the risk-utility test is not applicable, we now turn to other issues raised by the parties.

II. Whether the Burden of Proof Shifted to Defendant

We think it obvious that in a negligence case, the burden of proof remains on the plaintiff throughout the proceedings to prove all of the elements of negligence. 
Sullivan v. Edward Hospital
, 209 Ill. 2d 100, 112 (2004), quoting 
Purtill v. Hess
, 111 Ill. 2d 229, 241-42 (1986); 
Niewold v. Fry
, 306 Ill. App. 3d 735, 744-45 (1999) (in any negligence action, the burden is on the plaintiff to prove negligence, not on the defendant to disprove negligence). We address this point only because of the appellate court’s finding that the risk-utility test applied to this case and that it required a shifting of the burden of proof to defendant. The appellate court here, relying on 
Wortel
, 331 Ill. App. 3d 895, shifted the burden of proof, though 
Wortel
 did it in the context of a strict liability case.

The appellate court found that once a plaintiff presents evidence that a defective design proximately caused his injury, the burden then shifts to the defendant, who must “ ‘prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs.’ ” 345 Ill. App. 3d at 466, quoting 
Lamkin
, 138 Ill. 2d at 529. The appellate court employed this language from 
Lamkin
 to find that defendant failed to satisfy its burden because it presented no evidence that “the utility of the machine would have been hampered by *** precautions, that the cost of further precautions were prohibitive, or that the danger involved was not serious or likely to recur.” 345 Ill. App. 3d at 470. 
Lamkin
, however, never actually held that the burden shifts to the defendant, and in fact, the court effectively held the opposite when it found that summary judgment for the defendant in that case was proper because the plaintiffs had failed to present any evidence on the feasibility of an alternative design. See 
Lamkin
, 138 Ill. 2d at 530. The majority in 
Wortel
 claimed that Illinois was one of three jurisdictions nationwide to have adopted the burden-shifting requirement.

The burden-shifting requirement is actually derived from the California case of 
Barker v. Lull Engineering Co.
, 20 Cal. 3d 413, 429-30, 573 P.2d 443, 454, 143 Cal. Rptr. 225, 236 (1978), which pioneered the risk-utility test. Although 
Lamkin
 quoted the risk-utility test verbatim from 
Barker
, no decision of this court has adopted the burden-shifting requirement of 
Barker
. Instead, we have conducted analyses similar to the one in 
Lamkin
, focusing on the evidence presented by the plaintiff. See 
Hansen
, 198 Ill. 2d at 436; 
Engelke
, 76 Ill. 2d at 163-64.

In 
Engelke
, this court cited with approval two appellate court cases that held that it is the plaintiff’s burden to prove an alternative feasible design in a strict liability case: 
Sutkowski v. Universal Marion Corp.
, 5 Ill. App. 3d 313, 319 (1972), and 
Wright v. Massey-Harris, Inc.
, 68 Ill. App. 2d 70, 79 (1966). 
Engelke
, 76 Ill. 2d at 162-63. The actual holding of 
Engelke
 was that the plaintiff did not have to 
plead
 a feasible, alternative design in a strict products liability case, and it was technically unnecessary to decide who had the burden to 
prove
 it because the plaintiff did present the proof. In the Third Restatement, the American Law Institute places the burden on the plaintiff in such cases. Restatement (Third) of Torts: Products Liability § 2, Comment 
f
, at 23-25 (1998). Comment 
f
 notes that a plaintiff must establish a 
prima facie
 case of defect by proving the availability of a technologically feasible and practical alternative design that would have reduced or prevented the harm. Restatement (Third) of Torts: Products Liability § 2, Comment 
f
, at 23-24 (1998). In other words, a plaintiff must present sufficient evidence to avoid any summary judgment motion that might be pursued by a defendant. Assuming a plaintiff is able to avoid summary judgment, the issue is then one for the trier of fact to resolve.

III. Whether Plaintiff Proved His Claim, and if Not, Whether It Makes Any Difference to the Outcome

Here, plaintiff’s expert testified that the compactor should have had either a manual pressure control or an interlock guard so no one could reach inside. The expert further testified that the technology was available in 1975 to implement both of these safety procedures when the compactor was sold. However, the expert also acknowledged that in 1975 these types of compactors were still being manufactured and sold. Plaintiff presented no evidence of the industry standard or that it was breached in this case. Because he presented no evidence of the industry standard, it goes without saying that he presented no evidence that the industry standard itself was unreasonable. Accordingly, it would appear that he did not prove his negligence case.

However, Browning does not argue on appeal that the jury verdict should have been vacated on this basis, nor did Browning file any posttrial motion attacking the verdict on this basis. Illinois law is very clear that on review from a jury case, “[a] party may not urge as error on review of the ruling on the party’s post-trial motion any point, ground, or relief not specified in the motion.” 155 Ill. 2d R. 366(b)(2)(iii); 735 ILCS 5/2–1202 (West 2002); 
Elliott v. Willis
, 92 Ill. 2d 530, 543 (1982); 
Metropolitan Life Insurance Co. v. Nauss
, 226 Ill. App. 3d 1014, 1019 (1992). Accordingly, any claim by Browning that plaintiff failed to present sufficient evidence as to the standard of care is foreclosed at this point.

Moreover, on appeal before this court, Browning argues only that judgment should have been entered on the special interrogatory; it does not make any independent claim that the jury’s verdict should be set aside as a matter of law based on the lack of a duty or that the evidence was insufficient to prove plaintiff’s claim or sustain his cause of action. As we explain more fully below, the special interrogatory should not have been given, as the jury’s answer to it could not have resolved an ultimate issue of this case. Thus, Browning raises no valid basis to successfully attack the jury’s verdict.

Additionally, we note that Browning did file a posttrial motion raising a number of matters in connection with a request for a judgment 
n.o.v.
 and, in the alternative, a request for a new trial. The trial court conditionally denied those requests. The appellate court duly noted that Browning’s requests for relief were conditionally denied. However, after reinstating the jury’s verdict, the appellate court remanded the cause for reconsideration of the trial court’s conditional rulings. We have no problem with the appellate court’s remand, but note that our resolution of the instant issue is unaffected by any of the other matters raised in defendant’s posttrial motion because it did not specifically challenge the evidence presented as to the appropriate standard of care.

IV. Whether the Open and Obvious Doctrine Is Applicable, and if So, How

A. 
The Failure to Warn Compared With Other Kinds of Negligence Allegations

The appellate court found that in a products liability action, whether premised on negligence or strict liability, the open and obvious nature of a condition would not be a 
per se
 bar to recovery at least with respect to actions such as this one, which are predicated on allegations of defective design and not merely on a failure to warn. 345 Ill. App. 3d at 466. We agree generally with this assessment.

Clearly, no duty to warn exists in a products liability case where the danger is apparent or open and obvious. 
Sollami v. Eaton
, 201 Ill. 2d 1, 7 (2002) (manufacturer had no duty to warn a 15-year-old teenager of the dangers of “rocket” jumping on a trampoline). When a risk is obvious or generally known, the prospective addressee of a warning will or should already know of its existence. Restatement (Third) of Torts: Products Liability §2, Comment 
j
, at 31 (1998). Warning of an obvious or generally known risk in most instances will not provide an effective additional measure of safety. Restatement (Third) of Torts: Products Liability §2, Comment 
j
, at 31 (1998). Furthermore, warnings that deal with obvious or generally known risks may be ignored by users and consumers and may diminish the significance of warnings about nonobvious, not-generally-known risks. Restatement (Third) of Torts: Products Liability §2, Comment 
j
, at 31 (1998).

However, the obviousness of a danger posed by a product has a different bearing on a case when the issue is not one of a failure to warn, but rather one of defective design. Comment 
d
 of section 2 of the Third Restatement instructs that the open and obvious danger presented by a product’s design is not an absolute bar to recovery. Restatement (Third) of Torts: Products Liability §2, Comment 
d
, at 20-21 (1998). Comment 
d
 states that “[t]he fact that a danger is open and obvious is relevant to the issue of defectiveness, but does not necessarily preclude a plaintiff from establishing that a reasonable alternative design should have been adopted that would have reduced or prevented injury to the plaintiff.” Restatement (Third) of Torts: Products Liability §2, Comment 
d
, at 20 (1998). In contrast, Comment 
j
 of the same Restatement provides for a different rule when the claim is a failure to warn: a product seller is not liable for failing to warn or instruct with respect to risk and risk-avoidance measures that should be obvious to, or generally known by, foreseeable product users. Restatement (Third) of Torts: Products Liability §2, Comment 
j
, at 31 (1998).

The approach taken by the Third Restatement differs from the Second Restatement, which had concluded that the “form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.” Restatement (Second) of Torts §402A, Comment 
n
, at 356 (1965). A strong majority of courts, however, have now rejected the open and obvious doctrine as an absolute defense to a claim of design defect in strict liability cases not premised on the failure to warn. Restatement (Third) of Torts: Products Liability §2, Reporters’ Note to Comment 
d
, at 84-85 (1998) (collecting cases). This appears to be consistent with Illinois law. See 
Coney v. J.L.G. Industries, Inc.
, 97 Ill. 2d 104, 119 (1983) (in a strict products liability action, the defenses of misuse and assumption of risk will no longer bar recovery; instead, such misconduct will be compared in the apportionment of damages, thereby reducing the recovery of plaintiff by his relative degree of fault). In strict products liability cases, the open and obvious nature of the risk is just one factor to be considered in the range of considerations required by the risk-utility test, and it will only serve to bar the liability of the manufacturer where it outweighs all other factors to be considered in weighing the inherent design risks against the utility of the product as manufactured. 
Wortel
, 331 Ill. App. 3d at 907.

We must now consider how these principles apply in the context of a product design case predicated on negligence as opposed to strict liability. The parties do not cite any case that has applied the open and obvious doctrine to bar a claim of defective design based on negligence, nor do they cite any case applying the doctrine to a strict liability case, other than in the context of the failure to warn (see 
Sollami
, 201 Ill. 2d at 11), or where the product is considered “simple” (see 
Bates v. Richland Sales Corp.
, 346 Ill. App. 3d 223 (2004); 
Todd
, 21 F.3d 1402; 
Scoby v. Vulcan-Hart Corp.
, 211 Ill. App. 3d 106 (1991)). We believe that the strict liability rule on the open and obvious doctrine should generally be applied to patently dangerous products that are alleged to be negligently designed, with one important limitation: the open and obvious danger of a product may still be considered by the court as part of a duty analysis. Thus, we find that, generally, the open and obvious nature of the danger posed by a product in a negligence case is not an absolute bar. Instead, it can be considered by the jury in some circumstances when it is called upon to determine the percentage of fault on the part of the plaintiff, as was done in this case. We believe that this rule would be subject to one important caveat. Products liability cases sounding in negligence are subject to the duty analysis required by a negligence cause of action when appropriately raised by defendants on a motion for summary judgment. In such cases, the open and obvious nature of the danger posed by a product may be considered as part of the duty analysis to determine whether, as a matter of law, the obviousness of the danger negates any duty in a particular case.

B. 
Open and Obvious Doctrine’s Relation to Duty Analysis

Consideration of the open and obvious danger as part of the general duty analysis to be applied in negligence cases requires a look at four factors: (1) the foreseeability of injury, (2) the likelihood of injury, (3) the magnitude of guarding against the injury, and (4) the consequences of placing the burden on the defendant. 
Sollami
, 201 Ill. 2d at 17; 
Bucheleres
, 171 Ill. 2d at 456. A difference between strict liability and negligence cases exists on this point. The risk-utility test applies to strict products liability cases. In that context, once sufficient evidence is presented so that reasonable persons could conclude that a reasonable alternative design could have been practically adopted, and the court concludes that sufficient evidence has been presented, the issue is one for the trier of fact. See 
Wortel
, 331 Ill. App. 3d at 907. In contrast, negligence’s duty analysis is a question of law for the courts when raised by defendants on summary judgment. 
Lara v. Thoro-Matic Vacuum Systems, Inc.
, 194 Ill. App. 3d 781, 787 (1990) (whether a duty exists is properly decided as a matter of law on motion for summary judgment, and the trial court properly granted summary judgment in favor of the defendant on the plaintiff’s claim that the defendant negligently designed a vacuum cleaner); see also 
Sollami
, 201 Ill. 2d at 7. If we look to 
Sollami
 for guidance, it would appear that the open and obvious nature of the condition would mean that the result of the duty analysis would be almost a foregone conclusion in some cases–because if the risk is obvious, the danger of injury is likely to be slight and the burden of guarding against it is likely to be unjustified. See 
Sollami
, 201 Ill. 2d at 17-18; 
Allen v. Martinez
, 348 Ill. App. 3d 310, 314 (2004).

There may, however, be some differences in application of the doctrine, depending on whether the negligence suit is based on allegations of premises liability as opposed to products liability. Section 343A(1) of the Second Restatement is specifically titled “Known or Obvious Dangers” and provides as follows:

“(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.” Restatement (Second) of Torts §343A(1), at 218 (1965).

Comment 
e
 to section 343A explains that a possessor of land may reasonably assume that one entering upon the land will protect himself by the exercise of ordinary care, or that the enterer will voluntarily assume the risk of harm if he does not succeed in doing so. Restatement (Second) of Torts §343A, Comment 
e
, at 219 (1965). Reasonable care on the part of the possessor, therefore, does not ordinarily require precautions, or even a warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them. Restatement (Second) of Torts §343A, Comment 
e
, at 219 (1965). This rule seems to excuse both the failure to warn and the failure to take precautions in relation to the condition on the land, as long as the danger was open and obvious to the plaintiff.

C. 
Two Exceptions to Open and Obvious Rule in Premises Liability Cases

The open and obvious rule, however, has two exceptions in premises liability cases. The first is known as the “distraction exception” and the second is known as the “deliberate encounter” exception. This court had occasion to apply the deliberate encounter exception in 
LaFever v. Kemlite Co.
, 185 Ill. 2d 380 (1998). There, we held that a defendant in a premises liability case was liable to the plaintiff, an employee of another company, for an injury that occurred when the plaintiff slipped on a substance located on the defendant’s property that plaintiff encountered in the course of his job duties of servicing a trash compactor.

Plaintiff urges this court to find that the deliberate encounter exception applies in this case, thereby negating the open and obvious rule and rendering the special interrogatory erroneous. The problem with plaintiff’s argument is that this is not a premises liability case. He cites no case whatsoever that has ever applied the premises liability exceptions to the open and obvious rule in a products liability action. 
Preze v. Borden Chemical, Inc.
, 336 Ill. App. 3d 52 (2002), relied upon by plaintiff, is actually a premises liability case and does not support his position. There, the plaintiff was injured when he fell from a resin-coated ladder at the defendant’s plant. The court held that the defective condition was the resin that saturated the defendant’s plant, not the structurally sound ladder. 
Preze
, 336 Ill. App. 3d at 59. Applying the premises liability exceptions of 
LaFever
 to this case would indeed be highly problematic. Browning, as the manufacturer, sold the trash compactor to Smyth in 1975. There is no evidence that Browning retained any control over the compactor, and it certainly was not a possessor of land within the meaning of section 343A of the Restatement. Accordingly, there is no basis whatsoever to apply the deliberate encounter exception here.

D. 
Treatment of Obviously Dangerous Products Under the Restatement

The known and obvious danger rule of section 343A, which applies to premises liability, differs from the rules set forth for allegedly dangerous products, where no question of premises liability is involved. Comment 
b
 of section 398 of the Second Restatement, setting forth the rule for the negligent design of chattels, provides that “[i]f the dangerous character of the plan or design is known to the user of the chattel, he may be in contributory fault if the risk involved in using it is unreasonably great or if he fails to take those special precautions which the known dangerous character of the chattel requires.” Restatement (Second) of Torts §398, Comment 
b
, at 336 (1965). It is not entirely clear what the Institute had in mind here when it used the term “contributory fault,” given its explanation in comment 
n
 of section 402A, which suggests use of the term as an absolute bar to recovery. But again, the Third Restatement has noted a course change in products liability cases, recognizing that the strong majority rule is now that the open and obvious nature of a product is not necessarily an absolute bar to recovery. Restatement (Third) of Torts: Products Liability §2, Comment 
d
, at 20 (1998). We also note that the comments to sections 1 and 2 of the Third Restatement emphasize the close relationship between the risk-utility test in defective product design actions sounding in strict liability and the ordinary negligence standard, going so far as to take the position that any difference may be semantical. See Restatement (Third) of Torts: Products Liability §1, Comment 
a
, at 7-8 (1998). Given this approach, we apply the rule of strict liability to negligence cases, and find that the patent danger rule is not necessarily an absolute bar to recovery either in strict liability design or negligent design cases. But as we have said above, the risk-utility test does not apply to negligence cases. Rather, the open and obvious risk may be a part of the duty analysis in negligence cases where it is properly raised.

We additionally note that despite its position on the open and obvious doctrine generally, the American Law Institute points out that in some strict liability cases the open and obvious nature of the product could still result in a decision in favor of the defendant made by the court as a matter of law, discussing among other matters the “simple machine” exception. Restatement (Third) of Torts: Products Liability §2, Reporters’ Note to Comment 
d
, at 86 (1998), citing 
Todd
, 21 F.3d 1402. We find this exception to be further support for our conclusion that a court may decide as a matter of law whether the patent danger of a product precludes a duty in a given case when presented with a motion for summary judgment to decide the issue.

E. 
Simple Machine Exception

Browning points out that there is a line of cases that holds that in a strict liability action, the risk-utility test need not be applied where the product is “simple” but obviously dangerous. See 
Bates
, 346 Ill. App. 3d 223; 
Todd
, 21 F.3d 1402; 
Scoby
, 211 Ill. App. 3d 106. The results obtained in these cases serve to buttress our rationale by showing that even in strict liability cases where the risk-utility test is applied, the obvious danger of the product may still bar liability 
as a matter of law
 in 
some
 cases.

In 
Scoby
, the plaintiff slipped at work, causing his arm to become immersed in a vat of hot oil. He alleged that the vat should have had a cover to prevent his injury and that such covers were readily available. The trial court granted summary judgment for the manufacturer of the fryer, and the result was affirmed on appeal. The appellate court determined that in certain cases the risk-utility test should not be employed, and a court may find a product not defective as a matter of law. 
Scoby
, 211 Ill. App. 3d at 112. In so concluding, the court stated the following:

“Defendant’s concern with the use of the danger-utility test here is well taken. The mechanics involved are simple. Very hot liquid is, of course, quite dangerous, but the danger was very obvious to both the defendant and the plaintiff. *** Defendant draws analogy to a sharp kitchen knife that might be on a table. It asks whether a manufacturer of the knife could be strictly liable if somebody were cut by the knife if the manufacturer did not furnish with the knife, as a usual part and advertised as a safety factor, a sheath to cover the blade of the knife. The analogy is appropriate. Many manufactured products have a potential to cause substantial injury, and most can be made safer by a different design.

We do not deem that 
Lamkin
 or other cases applying aspects of the danger-utility test intend that all manufacturers of products described above should be subject to liability depending upon a trier of fact’s balancing under that test, when suit is brought by one injured by such a product. Somewhere, a line must be drawn beyond which the danger-utility test cannot be applied. Considering not only the obvious nature of any danger here but, also, the simple nature of the mechanism involved, we conclude the circuit court properly applied only the consumer-user contemplation test. Under that test, summary judgment for the defendant was clearly proper.” 
Scoby
, 211 Ill. App. 3d at 112.

The holding of 
Scoby
 was followed in 
Todd
, a federal diversity suit that required application of Illinois law. There, a four-year-old child started a fire with a cigarette lighter. The plaintiff argued that the product was unreasonably dangerous, despite warnings to keep it out of the reach of children, because it did not have child-resistant features. Based on its examination of past and current case law, it concluded that the Illinois Supreme Court would not apply the risk-utility test to simple but obviously dangerous products, and that an ordinary disposable lighter was such a product. 
Todd
, 21 F.3d at 1412.

Similar to 
Scoby
 and 
Todd
, 
Bates
 held that an end loader without a roll bar was an open and obvious condition that mandated summary judgment in the defendant’s favor. The court concluded that the danger that the driver’s body might collide with low-hung objects is obvious to an ordinary person driving a loader without a roll bar. 
Bates
, 346 Ill. App. 3d at 235, citing 
Smith v. American Motors Sales Corp.
, 215 Ill. App. 3d 951, 959 (1991) (Jeep with detachable side doors was not unreasonably dangerous as a matter of law, even though it allowed a driver to extend a leg outside the compartment, making it vulnerable in a collision, because driving with a foot outside the door posed an open and obvious danger, for which a manufacturer could not incur strict products liability).

Other jurisdictions have handled these kinds of cases in like fashion. See, 
e.g.
, 
Kearney v. Philip Morris, Inc.
, 916 F. Supp. 61, 72 (D. Mass. 1996) (Judge Robert Keaton, formerly a professor and one of the leading commentators on tort law, held that despite the fact that Massachusetts has rejected the patent-danger rule, the state’s courts have refused to extend the liability of manufacturers for “injuries resulting from common, everyday products whose obvious dangers are known to be associated with use of the product”); 
Jackson v. Corning Glass Works
, 538 A.2d 666 (R.I. 1988) (held that obviousness of stacking Corning Ware and glass lids was so great that verdict was properly directed for the defendant); 
Jones v. White Motor Corp.
, 61 Ohio App. 2d 162, 178, 401 N.E.2d 223, 233 (1978) (court rejected open and obvious danger rule, but acknowledged that there may be cases where no duty exists as a matter of law because of the obvious danger posed); 
Dreisonstok v. Volkswagenwerk, A.G.
, 489 F.2d 1066, 1075-76 (4th Cir. 1974) (the obviousness of the risk of injury from a microbus without front engine protection resulted in a directed verdict for defendant in a defective design case); see also Restatement (Third) of Torts: Products Liability §2, Comment 
d
, at 86-87 (1998) (discussing the same cases).

This court recently considered the 
Scoby
 exception to application of the risk-utility test for simple products. In 
Hansen
, this court distinguished 
Scoby
 on the basis that the product before it–a friction-fit device used by doctors for IV and catheter connections–was not simple and could not be rationally compared to the kettle of boiling oil in 
Scoby
. 
Hansen
, 198 Ill. 2d at 437. Accordingly, 
Hansen
 held that the risk-utility test was applicable despite any obvious danger in the product. 
Hansen
, 198 Ill. 2d at 436-38. 
Hansen
 is noteworthy because it seems to recognize the 
Scoby
 exception as valid, while emphasizing the requirement that the product indeed be simple as well as open and obviously dangerous. 
Wortel
, decided after 
Hansen
, also distinguished 
Scoby
 on the basis that the product in 
Wortel
–a pizza dough rolling machine–was not simple.

We find that the 
Scoby
 exception is further support for the conclusion that courts may decide whether the patent-danger rule negates a duty in negligence as a matter of law in some cases.

V. Whether the Special Interrogatory Was Properly Read to the Jury

The principles to be applied with respect to special interrogatories are well settled, and this court recently articulated them as follows:

“A special interrogatory serves ‘as guardian of the integrity of a general verdict in a civil jury trial.’ 
O’Connell v. City of Chicago
, 285 Ill. App. 3d 459, 460 (1996). It tests the general verdict against the jury’s determination as to one or more specific issues of ultimate fact. 
Noel v. Jones
, 177 Ill. App. 3d 773, 783 (1988); 
Gasbarra v. St. James Hospital
, 85 Ill. App. 3d 32, 38 (1979). A special interrogatory is in proper form if (1) it relates to an ultimate issue of fact upon which the rights of the parties depend, and (2) an answer responsive thereto is inconsistent with some general verdict that might be returned. 
Noel
, 177 Ill. App. 3d at 783; 
Gasbarra
, 85 Ill. App. 3d at 38. Special findings are inconsistent with a general verdict only where they are ‘clearly and absolutely irreconcilable with the general verdict.’ 
Powell v. State Farm Fire & Casualty Co.
, 243 Ill. App. 3d 577, 581 (1993). If a special interrogatory does not cover all the issues submitted to the jury and a ‘reasonable hypothesis’ exists that allows the special finding to be construed consistently with the general verdict, they are not ‘absolutely irreconcilable’ and the special finding will not control. 
Powell
, 243 Ill. App. 3d at 581. In determining whether answers to special interrogatories are inconsistent with a general verdict, all reasonable presumptions are exercised in favor of the general verdict. 
Bilderback v. Admiral Co.
, 227 Ill. App. 3d 268, 270 (1992). ” 
Simmons v. Garces
, 198 Ill. 2d 541, 555-56 (2002).

Applying the above-mentioned principles, it is clear that the special interrogatory in the present case should not have been given. It did not resolve, and indeed could not have resolved, the ultimate issue in the case. This is because the question of whether a duty exists in a negligence cause of action is one of law for the court. Whether the open and obvious condition of the product was an absolute bar to recovery is part of the duty analysis and is also a question of law for the court to resolve. If defendant believed that the open and obvious danger posed by the product barred recovery in this case, defendant should have addressed its arguments to the trial court by way of a motion to dismiss or a motion for summary judgment. Parenthetically, we note that if we had found that the risk-utility test had applied, the open and obvious condition would have merely been one factor for the jury to consider in its balancing of the risk-utility test in reaching its determination as to whether the product was defective, and therefore the answer to the interrogatory likewise would not have been conclusive in that situation. The jury was also not asked to resolve whether the machine in this case was simple, so even if the question was one for the jury, a reasonable hypothesis exists to construe the special interrogatory and the verdict consistently.

CONCLUSION

In sum, we note that plaintiff may have failed to present sufficient evidence of the standard of care. Browning, however, did not challenge the sufficiency of the evidence on this point. Instead, it only sought entry of judgment based on the jury’s answer to the special interrogatory. The open and obvious danger of the product is not an absolute bar to recovery in every case, and in any event, whether it is a bar in a given case is a question for the court to resolve. Therefore, the interrogatory was improper, as it did not resolve an ultimate issue in the case and was not necessarily inconsistent. We further acknowledge the viability of the simple product exception in strict liability cases as support for our decision. Finally, we note that defendant never filed a motion for summary judgment to request the court to find as a matter of law that defendant owed no duty based on the patent danger of the product. Moreover, none of defendant’s points in its posttrial motion contend that the obvious danger of a “simple” machine mandated a finding that no duty was owed as a matter of law.

Accordingly, we affirm the judgment of the appellate court–reinstatement of the jury verdict–but, as the foregoing discussion indicates, we do so on a different basis than the appellate court. We also affirm the appellate court’s remand of the cause for further consideration of the parties’ posttrial motions.

Affirmed.

JUSTICE KARMEIER took no part in the consideration or decision of this case.

JUSTICE FREEMAN, specially concurring:

I join in the result reached by the majority. However, I write separately to distance myself from the majority’s analysis and its forays into 
dicta
. The present case is a defective product design case in which plaintiff seeks recovery on a negligence theory of liability. The majority opinion contains sweeping pronouncements effecting changes not only with respect to products liability cases based on a negligence theory but also products liability cases based upon strict liability.

As the majority opinion notes, “any claim by Browning that plaintiff failed to present sufficient evidence as to the standard of care is foreclosed at this point.” Slip op. at 17. As the majority opinion also notes, Browning “does not make any independent claim that the jury’s verdict should be set aside as a matter of law based on the lack of a duty or that the evidence was insufficient to prove plaintiff’s claim or sustain his cause of action.” Slip op. at 17. Thus, like Justice Fitzgerald I believe this case is not the appropriate forum to decide whether the risk-utility test is applicable in a negligence design defect case. I also believe that it is unnecessary to determine in this case whether the risk-utility test is a part of a duty analysis in a defective product design case. Accordingly, I join in Justice Fitzgerald’s special concurrence. Furthermore, I agree with Justice Kilbride that the majority’s discussion of the simple machine exception to the risk-utility test is 
dicta
. If the risk-utility test does not apply to negligence cases, as the majority holds, the simple machine exception to the risk-utility test is also inapplicable. Consequently, I join in that portion of Justice Kilbride’s partial concurrence and partial dissent.

In the interest of providing clarification to the bench and bar, I note further that only three members of this court support the conclusion, expressed in the majority opinion, that the risk-utility test does not apply in a negligence design defect case. Because this conclusion lacks the support of a majority of the members of this court, it is not binding authority.

JUSTICE FITZGERALD, also specially concurring:

The majority’s well-written opinion concerns an often confusing area of evolving law. Today’s decision states that the risk-utility test is not applicable in a negligence cause of action. I write because I believe that specific ruling is 
dicta
. Additionally, I believe that the risk-utility test is part of a court’s duty analysis. However, the larger question–the degree that the risk-utility test is coextensive with a duty analysis in a design defect case–need not be answered in this case.

As an initial matter, the majority’s discussion of the applicability of the risk-utility test to negligence is 
dicta
. Plaintiff’s expert consulting engineer, Marvin Salzenstein, did not testify as to the standard of care. The majority concludes that, as a result, plaintiff did not prove his case in negligence because there is no evidence of the standard of care, or that it was breached. Slip op. at 16. Importantly, however, defendant did not object to this omission. For this reason, the majority holds that a future objection on this error is foreclosed. Slip op. at 16-17. I agree with this resolution. However, the majority then goes on to state that the “risk-utility test is not applicable” in assessing a design defect claim based in negligence. Slip op. at 14 Because the majority determines that defendant has not properly challenged the duty determination, I believe it is unnecessary to decide whether the risk-utility test is applicable in determining a duty in a negligence design defect case. It is therefore 
dicta
.

Moreover, I write because I disagree with the categorical conclusion that the risk-utility test does not apply in a negligence design defect case. Slip op. at 14, 23. The implication of this statement is that the risk-utility test is not relevant to the duty inquiry. I believe the correct conclusion is borne from the following question: What role does the risk-utility test play in the duty analysis? A look at the evolving law in this area reveals that the test does in fact play a role in evaluating the existence of a duty. According to traditional principles,

“The product liability action brought under strict liability is different from negligence mainly in the element of scienter; plaintiff need not prove that the defendant negligently created the unsafe condition of the product or that defendant was aware of such condition. Strict liability looks at the product itself and determines if it is defective, whereas negligence looks at the act of the manufacturer and the court determines if the manufacturer exercised ordinary care in design and production.

In short, an action based on strict liability in tort focuses upon the nature of the product, rather than the conduct of the defendant. In negligence, foreseeability of harm is a fact question, whereas, in strict liability, a product’s propensity to inflict harm is assumed. The distinction between the two theories of recovery is that the inability of the defendant to know or prevent the risk is not a defense to a strict liability action, but such inability does preclude a finding of negligence. Thus, there is no inconsistency in a jury finding that there is a defect in a product, but that a plaintiff has failed to prove negligence on the defendant’s part.” 63 Am. Jur. 2d 
Products Liability
 §545 (1997).

Stated another way,

“Although liability in negligence cases rests on whether the defendant acted as a reasonable person would have acted, liability in strict liability cases rests on whether a prudent manufacturer, if it were aware of dangers involved in using its products as those dangers are known from hindsight, would have placed the product into the stream of commerce; the plaintiff need not prove that the danger was foreseeable. Thus, strict liability differs from negligence, for purposes of design defect analysis, to the extent that the foreseeability of the dangerous propensities of the product is imputed to the manufacturer in strict tort liability analysis.

Knowledge of the dangerous potential of a machine design as reflected in the evidence at trial is imputable to the manufacturer, and the remaining determinative question is whether a reasonably prudent manufacturer with such foreknowledge would have put such a product into the stream of commerce after considering the hazards as well as the utility of the machine, the ease of incorporating an alternative, safer design, the likelihood, vel non that the machine would be used in the manner which led to the plaintiff’s injury, and such other factors as bear upon the prudence of a reasonable manufacturer in deciding whether to market the machine.” 63A Am. Jur. 2d 
Products Liability 
§959 (1997).

Thus, the 
scienter
 requirement, namely, the foreseeability of harm, is the primary distinction between negligence and strict liability in design defect cases. See 
Hansen v. Baxter Healthcare Corp.
, 198 Ill. 2d 420, 438 (2002) (declining to address issue of whether the risk-utility test includes “foreseeability” as defined in the Restatement (Third) of Torts).

The above-quoted material represents the traditional state of the law on this issue. This ironclad distinction between strict liability and negligence has been eroded by some courts and commentators. The Restatement (Third) of Torts best illustrates this erosion. As the majority states, “[w]e also note that the comments to section 1 and 2 of the Third Restatement emphasize the close relationship between the risk-utility test in defective product design actions sounding in strict liability and the ordinary negligence standard, going so far as to take the position that any difference may be semantical.” Slip op. at 23, citing Restatement (Third) of Torts: Products Liability §1, Comment 
a
, at 7-8 (1998). This purported semantical difference rests on the foreseeability element. For example, section 2(b) of the Third Restatement of Torts: Products Liability states a product “is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor *** and the omission of the alternative design renders the product not reasonably safe.” Restatement (Third) of Torts: Products Liability §2(b), at 14 (1998). The appellate court in the instant matter recognized this problem when it set the tests side by side. It stated,

“To determine the existence of a duty in a negligence action, the court will consider: (1) foreseeability, (2) likelihood of injury, (3) magnitude of the burden on the defendant to guard against the injury, and (4) consequences of placing the burden on the defendant. [Citation.] The risk-utility test employs the following considerations: (1) the gravity of the danger posed by the challenged design, (2) the likelihood that such danger would occur, (3) the mechanical feasibility of a safer alternative design, and (4) the adverse consequences to the product and to the consumer that would result from an alternative design. [Citation.] As previously noted, the similarities between the considerations employed by these tests cannot be negated by simply changing the terminology.” 345 Ill. App. 3d at 467.

Thus, the question–the extent to which the risk-utility test plays in negligence cases–rests upon whether the “foreseeability” element is merely a semantical distinction. If the difference is only semantical, then risk-utility and the duty analysis are similar tools. If the distinction retains force, the proper ingredients of a duty determination include the risk-utility test 
and
 foreseeability. Importantly, applying risk utility in a negligence cause of action does not erode the 
scienter 
distinction between strict liability and negligence as it exists under traditional law. For this reason, I would find that the risk-utility test is inherent in a negligence design defect action. However, the larger question–the degree that the risk-utility test is coextensive with a duty analysis in a design defect case–remains unanswered.

Again, because the resolution of the instant case does not require that we answer the larger question, I would leave the issue open for a more appropriate time. As such, I would continue to follow our statement in 
Hansen 
that, “[w]e do not foreclose the consideration of the Restatement (Third) of Torts standard in another case where it is raised at trial and is appropriately briefed and argued.” 
Hansen
, 198 Ill. 2d at 438. For these reasons, I specially concur.

CHIEF JUSTICE McMORROW joins in this special concurrence.

JUSTICE KILBRIDE, concurring in part and dissenting in part:

I agree with the majority that the trial court erred in giving the special interrogatory because the jury’s answer could not have resolved an ultimate issue in this case. Slip op. at 27. I also agree with the majority that the risk-utility test does not apply in negligence cases. Slip op. at 14.

The majority then, however, unnecessarily analyzes the applicability of the simple machine exception to the risk-utility test. If the risk-utility test does not apply, it follows that the simple machine exception to that test is likewise inapplicable. The majority discusses the holdings in 
Bates
, 
Todd 
and 
Scoby 
and concludes that the results in those cases “buttress our rationale by showing that even in strict liability cases where the risk-utility test is applied, the obvious danger of the product may still bar liability 
as a matter of law 
in 
some 
cases.” (Emphases in original.) Slip op. at 23. The majority further asserts that this court in 
Hansen
 “seems to recognize the 
Scoby 
exception as valid.” In actuality, we held in 
Hansen 
that 
Scoby 
was inapposite because the danger of the device in question was not obvious and the mechanism was not simple. 
Hansen
, 198 Ill. 2d at 437. Contrary to the majority’s claim, we clearly did not address the validity of the simple machine exception. We merely held the exception, whatever its merits, had no application under the facts of that case. In the matter before us, we do not decide that the mechanism of the compactor is “simple.” Thus, the discussion of the simple machine exception to the risk-utility analysis that has only been applied in strict liability cases does not buttress the opinion’s rationale and is nothing more than 
obiter dicta.

 The simple machine exception to the risk-utility test would be more appropriately addressed in a case when that issue is decisive. I cannot join in the majority’s finding that the 
Scoby 
exception is further support for the conclusion that courts may decide whether the patent-danger rule “negates a duty in negligence as a matter of law in some cases.” Slip op. at 26. I therefore respectfully dissent from that portion of the opinion.

FOOTNOTES
1:     
1
But 
cf.
 Restatement (Third) of Torts: Products Liability §2, Comment 
d
, at 19 (1998) (where the Institute states that the risk-utility test used for defective design cases in strict liability “requires a comparison between an alternative design and the product design that caused the injury, undertaken from the viewpoint of a reasonable person. That approach is also used in administering the traditional reasonableness standard of negligence. See Restatement, Second, Torts §283, Comment 
c
.” (Section 283 sets forth the reasonable person standard). “The policy reasons that support use of a reasonable-person perspective in connection with the general negligence standard also support its use in the products liability context”).