782 N.E.2d 710 (2002)
336 Ill. App.3d 52
270 Ill.Dec. 151
Raymond PREZE and Terri Preze, Plaintiffs-Appellants,
v.
BORDEN CHEMICAL, INC., f/k/a Acme Resin Corporation; Pinner Electric, Inc., and Lyons Electric Company, Inc., Defendants-Appellees.
No. 1-01-1381.
Appellate Court of Illinois, First District, Second Division.
November 26, 2002.
Rehearing Denied January 27, 2003.
*711 Mark R. McKenna of Christopher T. Hurley & Assoc, Chicago; David A. Novoselsky and Leslie J. Rosen of Novoselsky Law Offices, Chicago, for Appellant.
Michael W. Davis, Rick L. Jett and Vandhana Balasubramanian of Sidley Austin *712 Brown & Wood, Chicago, for Appellee Borden Chemical.
Maureen A. Coleman and John M. O'Driscoll of Tressler, Soderstrom, Maloney & Press, Chicago, for Appellees Pinner Electric and Lyons Electric.
Justice CAHILL delivered the opinion of the court:
Plaintiffs Raymond and Terri Preze appeal a summary judgment for defendants Borden Chemical, Inc., Pinner Electric, Inc., and Lyons Electric Company, Inc., on claims arising out of Raymond's injuries sustained in a construction accident. Plaintiffs also appeal the trial court's order striking their safety expert's affidavit under Supreme Court Rule 191 (145 Ill.2d R. 191). We reverse the summary judgment for defendant Borden, affirm summary judgments for defendants Pinner and Lyons, and affirm the trial court's ruling on the affidavit.
Borden hired Scheck Mechanical Corporation to perform routine general maintenance in its resin manufacturing plant. Borden also hired Pinner and Lyons to perform electrical work.
Plaintiff Raymond Preze was employed by Scheck as a pipe fitter. On May 5, 1997, Raymond was repairing a roof in a pump room when he slipped and fell off a ladder coated with resin, sustaining injuries.
Plaintiffs filed an eight-count complaint against Borden, Pinner and Lyons, alleging defendants were negligent in failing to protect Raymond from the dangerous ladder. Plaintiffs alleged that the ladder Raymond used on May 5 belonged to either Pinner or Lyons. Plaintiffs alleged that Pinner and Lyons knew that Scheck employees routinely used Pinner or Lyons ladders and other tools to complete Scheck jobs. Plaintiffs alleged that this knowledge imposed a duty on Pinner and Lyons to maintain safe equipment. Plaintiffs alleged that Borden was negligent in failing to protect Raymond from a dangerous condition on its property: resin.
Raymond testified in his deposition that he had over 25 years' experience as a pipe fitter and that he had worked at the Borden plant for 5 years. Raymond testified that, on May 5, 1997, he was repairing a weakened roof in a pump room. He climbed a 20-foot extension ladder to check work he had just completed when he slipped. Raymond said that the ladder rungs were slippery and coated with resin. He said this was to be expected because "if it was in the building, it had resin on it." Raymond testified that the ladder belonged to either Pinner or Lyons. Scheck, Raymond's employer, only had 40-foot ladders, which would not fit in the pump room. Pinner and Lyons both used 20-foot extension ladders. Borden owned no ladders.
Raymond admitted that he did not complain about the resin-coated ladder on the day he fell. But Raymond said he had complained two days earlier. Raymond asked Ken Biske, a Lyons employee, to clean the ladders. Biske told Raymond to clean the ladders himself. Raymond knocked off the bigger pieces of resin but did not clean the ladder completely because he believed the task was not his responsibility. Raymond said that he complained to Scheck about unsafe working conditions at Borden 25 to 50 times. Raymond said he complained about fumes, resin and acid leaks.
Raymond testified that he took directions only from Scheck. Borden exercised no control over Raymond's work. Raymond's equipment was furnished by Scheck, except for the 20-foot ladders. Raymond did not have to ask Pinner or Lyons to use the ladders. Pinner and *713 Lyons did not exercise control over Raymond's work or tell him how to use their ladders. Raymond testified that it was Scheck's policy to tag and remove unsafe equipment from use.
Ken Biske, a Lyons employee, testified in a deposition that he believed that the ladder plaintiff was using on May 5, 1997, belonged to Lyons. Biske admitted that his belief was based on a conversation he had with Raymond five months after the accident. Biske testified that Raymond told him that he slipped off a 20-foot extension ladder while working in the pump room.
Borden filed a motion for summary judgment. Borden argued that it had no duty to warn Raymond of danger of resin in the plant. Pinner and Lyons filed a joint motion for summary judgment. Pinner and Lyons admitted that ownership of the ladder used by Raymond was disputed. But Pinner and Lyons went on to say that, "assuming[,] arguendo," the ladder belonged to Pinner or Lyons, neither owed a duty to Raymond as a matter of law.
Plaintiffs submitted an affidavit of a safety expert, Dennis Puchalski, opposing the summary judgment motions. Puchalski testified that he was experienced in construction management, worksite safety and investigating worksite accidents. Puchalski said the presence of resin, inadequate lighting and loud noise in the pump room in Borden's plant were hazardous and dangerous. Puchalski also averred that Borden was responsible for project supervision and should have cleaned up the resin but failed to do so. Puchalski concluded that Borden knew or should have known that the dangerous conditions in the pump room could cause an accident. Puchalski also testified that the ladder belonged to Pinner and that Pinner had a duty to maintain the ladder in a safe condition. Puchalski's affidavit was based on a review of Borden's, Pinner's and Scheck's company policies and rules relating to employee safety, photographs of the pump room, and Occupational Safety and Health Administration standards. The documents referenced by Puchalski were not attached to the affidavit.
Pinner and Lyons filed a motion to strike the Puchalski affidavit under Rule 191 (145 Ill.2d R. 191). Borden joined the motion. Defendants argued that the affidavit offered opinion, not facts, and failed to include documents as required by Rule 191 (145 Ill.2d R. 191). The motion also alleged Puchalski's statement that Pinner owned the ladder was not based in fact.
The trial court granted the motion to strike. The trial court then granted the motions for summary judgment on all claims.
We first address the ruling on plaintiffs' affidavit.
We agree that the Puchalski affidavit was properly stricken under Rule 191. 145 Ill.2d R. 191. Plaintiffs contend that the failure to attach papers upon which the affiant relied and the offer of conclusions instead of facts supported by evidence were improper grounds for striking the affidavit. Plaintiffs argue the affidavit "firmly supported" their claim that defendants were liable for Raymond's injuries.
The trial court granted the motion to strike "in part as explained on the record." Plaintiffs did not include a transcript of the hearing in the record on appeal. We cannot tell from the briefs what parts of the affidavit were stricken or the trial court's reasons for striking them. Plaintiffs also failed to cite case law to support their argument. Plaintiffs, as appellants, bear the burden of providing a complete record to facilitate a meaningful review. Foutch v. O'Bryant, 99 Ill.2d 389, 391-92, 76 Ill.Dec. 823, 459 N.E.2d 958 (1984). We *714 must assume that the trial court's order was correct and had sufficient factual basis absent a complete record on appeal. Foutch, 99 Ill.2d at 391-92, 76 Ill.Dec. 823, 459 N.E.2d 958. The trial court's reasoning aside, it is clear that the ruling on the Puchalski affidavit was correct.
Affidavits submitted under Rule 191 in opposition to a motion for summary judgment are substitutes for testimony at trial. Strict compliance with Rule 191 insures that a trial court is presented with all valid evidentiary facts upon which to base a decision. The plain language of Rule 191(a) requires that documents supporting an affidavit must be attached. Robidoux v. Oliphant, 201 Ill.2d 324, 339, 266 Ill.Dec. 915, 775 N.E.2d 987 (2002). The failure to attach the documents is fatal. Robidoux, 201 Ill.2d at 339-40, 266 Ill.Dec. 915, 775 N.E.2d 987.
We next address the grant of summary judgments for all defendants. We review these rulings de novo. General Casualty Insurance Co. v. Lacey, 199 Ill.2d 281, 284, 263 Ill.Dec. 816, 769 N.E.2d 18 (2002).
Plaintiffs first argue that Borden, as owner, owed Raymond a duty to protect him from the dangerous conditions on its property.
Whether a duty exists is a question of law. Ward v. K Mart Corp., 136 Ill.2d 132, 140, 143 Ill.Dec. 288, 554 N.E.2d 223 (1990). We consider four issues to determine whether a duty exists: (1) foreseeability; (2) likelihood of injury; (3) magnitude of the burden on the defendant to guard against the injury; and (4) consequences of placing a burden on the defendant. LaFever v. Kemlite Co., 185 Ill.2d 380, 389, 235 Ill.Dec. 886, 706 N.E.2d 441 (1998). Where, as here, an injury is allegedly caused by a condition on a defendant's property, we first consider foreseeability and are guided in the analysis by section 343 of the Restatement (Second) of Torts and on supreme court interpretation of it. LaFever, 185 Ill.2d at 389, 235 Ill.Dec. 886, 706 N.E.2d 441. Section 343 subjects a landowner to liability if he: knows or by the exercise of reasonable care would discover the condition; should realize that it involves an unreasonable risk of harm; should expect that the danger will not be discovered by invitees; and fails to exercise reasonable care to protect invitees against the danger. Restatement (Second) of Torts § 343 (1965). This duty does not extend to risks created by "open and obvious" conditions. Bucheleres v. Chicago Park District, 171 Ill.2d 435, 447-48, 216 Ill.Dec. 568, 665 N.E.2d 826 (1996); Restatement (Second) of Torts § 343A (1965).
Plaintiffs concede that the presence of resin in Borden's plant created an open and obvious condition of which Raymond was aware. Plaintiffs contend that Borden is nevertheless liable under what has come to be known as the "deliberate encounter exception," contained in the comments to section 343A of the Restatement.
The deliberate encounter exception imposes a duty when a possessor of land "has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts § 343A, Comment f, at 220 (1965).
Borden counters that the exception does not apply because it was not foreseeable that Raymond would use a resin-coated ladder given earlier testimony that he cleaned ladders before using them. Borden also questions Raymond's actions in light of Scheck's policy of removing unsafe equipment from use. Raymond had testified that he followed this policy before his accident. Borden next argues that there was no evidence that Raymond was required *715 or forced to use a resin-coated ladder to complete a "low priority" job.
Borden's arguments stress the obviousness of the danger to a reasonable plaintiff. But the language of section 343A frames the duty analysis with an eye to the foresight of the landowner. See Restatement (Second) of Torts § 343A (1965) (possessor of land not liable "unless the possessor should anticipate the harm despite" knowledge or obviousness of the condition). (Emphasis added.) Liability stems from the landowner's knowledge of the premises and what the landowner had reason to expect the invitee would do in the face of the dangerous condition. LaFever, 185 Ill.2d at 392, 235 Ill.Dec. 886, 706 N.E.2d 441. Although an analysis under the deliberate encounter exception involves some consideration of the actions of a plaintiff (Hastings v. Exline, 326 Ill. App.3d 172, 176, 260 Ill.Dec. 220, 760 N.E.2d 993 (2001)), those actions do not determine a landowner's duty or answer the question whether he acted reasonably under the circumstances. Ward, 136 Ill.2d at 150, 143 Ill.Dec. 288, 554 N.E.2d 223. In short, the scope of a defendant's duty is not defined by plaintiffs negligence. Ward, 136 Ill.2d at 148, 143 Ill.Dec. 288, 554 N.E.2d 223.
Borden's reference to a lack of economic compulsion is unpersuasive. Borden contends that it was not necessary for Raymond to risk using a slippery ladder to complete a "low priority" job. The consequences faced by Raymond had he refused to work are relevant only to determine whether Raymond unnecessarily assumed the risk. LaFever, 185 Ill.2d at 394, 235 Ill.Dec. 886, 706 N.E.2d 441. For the reasons that follow, we conclude that our supreme court's reading of the Restatement imposes a duty on Borden as a matter of law.
Our supreme court's reasoning in LaFever guides our analysis. The defendant in LaFever operated a manufacturing plant that produced a waste product called edge trim. Edge trim is slippery and difficult to grasp by hand. LaFever, 185 Ill.2d at 384, 235 Ill.Dec. 886, 706 N.E.2d 441. Defendant hired a contractor to haul away the edge trim collected in a compactor on the defendant's property. LaFever, 185 Ill.2d at 384, 235 Ill.Dec. 886, 706 N.E.2d 441. The evidence revealed that edge trim would spill out of the compactor onto the ground around the compactor. The defendant's employees cleared the edge trim from the area when they were aware of it. LaFever, 185 Ill.2d at 386, 235 Ill.Dec. 886, 706 N.E.2d 441. The plaintiff was injured when he slipped and fell on edge trim that had spilled onto the ground near the compactor he was trying to empty. LaFever, 185 Ill.2d at 386, 235 Ill.Dec. 886, 706 N.E.2d 441. The court found that the defendant "could have reasonably foreseen that [the] plaintiff would risk walking through the edge trim, because it was necessary for [the] plaintiff to fulfill his employment obligations." LaFever, 185 Ill.2d at 392, 235 Ill.Dec. 886, 706 N.E.2d 441. This conclusion was based on the court's findings that emptying the compactor was the plaintiffs job, the plaintiff had to walk through spilled edge trim to reach the compactor, and the defendant knew that the edge trim posed a hazard. LaFever, 185 Ill.2d at 392, 235 Ill.Dec. 886, 706 N.E.2d 441.
Here, it is undisputed that Borden owned and operated a resin manufacturing plant. Raymond testified that resin was everywhere and coated everything"if it was in the building, it had resin on it." Raymond was charged with completing a specific task on Borden's propertyperforming routine maintenance. This job had to be undertaken despite the presence of resin throughout the plant, just as the *716 compactor in LaFever had to be emptied even though surrounded by edge trim. We must conclude that it was reasonably foreseeable to Borden that Raymond would risk an encounter with the resin to fulfill his employment obligations. LaFever, 185 Ill.2d at 392, 235 Ill.Dec. 886, 706 N.E.2d 441.
Borden insists, however, that LaFever is distinguishable because that case addressed a condition on the defendant's property, while this case involves the condition of a piece of equipment not owned by Borden, but present on Borden's property. But Borden overlooks that it is the resin in its plant that created the dangerous condition, not the structurally sound ladder. We do not believe the result in LaFever would have been different if the hazardous edge trim had been on a piece of equipment rather than on the ground. The point made in LaFever is that the plaintiff had no choice but to encounter the edge trim to fulfill his employment obligations. LaFever, 185 Ill.2d at 392, 235 Ill.Dec. 886, 706 N.E.2d 441. Where the edge trim was located within the plant was not determinative. So, too, Raymond had no choice but to encounter resin in Borden's plant because "if it was in the building, it had resin on it."
We note that while our analysis does render property owners insurers of invitees' welfare, the analysis is only partially conclusive of a possessor's duty. Ward, 136 Ill.2d at 156, 143 Ill.Dec. 288, 554 N.E.2d 223; LaFever, 185 Ill.2d at 396, 235 Ill.Dec. 886, 706 N.E.2d 441. The open or obvious nature of the hazard created by the resin will affect Raymond's ultimate recovery. Ward, 136 Ill.2d at 143, 143 Ill.Dec. 288, 554 N.E.2d 223. The reasonableness of Raymond's conduct is relevant to a comparative negligence analysis, but not to whether Borden owes a duty. Ward, 136 Ill.2d at 143, 143 Ill.Dec. 288, 554 N.E.2d 223.
We briefly review the remaining factors of the duty test. We believe they are also satisfied.
We concede that the likelihood of injury factor weighs against Raymond. He was aware of the slipperiness of the resin. But the factor is offset by the pervasiveness of the resin. LaFever, 185 Ill.2d at 397, 235 Ill.Dec. 886, 706 N.E.2d 441.
The remaining factors, the magnitude of the burden on Borden to guard against injury and the consequences of placing that burden on Borden, require us to consider whether Borden and Raymond stand in such a relationship to one another that the law imposes an obligation of reasonable conduct on Borden for Raymond's benefit. LaFever, 185 Ill.2d at 388-89, 235 Ill.Dec. 886, 706 N.E.2d 441; Ward, 136 Ill.2d at 140-41, 143 Ill.Dec. 288, 554 N.E.2d 223. The existence of a duty is also shaped by public policy. Kirk v. Michael Reese Hospital & Medical Center, 117 Ill.2d 507, 525, 111 Ill.Dec. 944, 513 N.E.2d 387 (1987).
Borden hired Raymond's employer to perform routine maintenance in its resin plant. As a consequence, Borden owed Raymond and all other subcontractors a nondelegable duty of providing a safe place to work. Leatherman v. Schueler Bros., Inc., 40 Ill.App.2d 56, 61, 189 N.E.2d 10 (1963). See also American Telephone & Telegraph Co. v. Leveque, 30 Ill.App.2d 120, 173 N.E.2d 737 (1961); Weber v. Northern Illinois Gas Co., 10 Ill.App.3d 625, 295 N.E.2d 41 (1973); Pempek v. Silliker Laboratories, Inc., 309 Ill.App.3d 972, 982, 243 Ill.Dec. 500, 723 N.E.2d 803 (1999). Imposing a burden on Borden here is consistent with public policy of ensuring safe workplaces. The consequences of placing this burden on Borden *717 are not unreasonable when compared to the likelihood of serious injury.
Plaintiffs next argue that, because codefendants Pinner and Lyons knew that Scheck employees regularly used their ladders, Pinner and Lyons had a duty to warn Raymond of the dangers of using a resin-coated ladder. Plaintiffs' argument is based on our analysis in Melchers v. Total Electric Construction, 311 Ill.App.3d 224, 243 Ill.Dec. 512, 723 N.E.2d 815 (1999). In Melchers, we held that a subcontractor who knew that its tools and equipment were used by other subcontractors had a duty to protect the other subcontractors against injury. Melchers, 311 Ill.App.3d at 230, 243 Ill.Dec. 512, 723 N.E.2d 815. We reversed summary judgment for the defendant subcontractor and remanded the case for the trier of fact to determine whether the defendant breached a duty and proximately caused the plaintiffs injuries. Melchers, 311 Ill.App.3d at 230-31, 243 Ill.Dec. 512, 723 N.E.2d 815. Melchers is distinguishable.
The plaintiff in Melchers was an employee of an electrical subcontractor responsible for installing conduit and wire. Melchers, 311 Ill.App.3d at 226, 243 Ill.Dec. 512, 723 N.E.2d 815. The plaintiffs employer entered into an oral subcontract with an excavation company to dig the necessary trenches. Melchers, 311 Ill. App.3d at 226, 243 Ill.Dec. 512, 723 N.E.2d 815. The plaintiff then worked in the trenches to dig around piping material in the ground while installing conduit. Melchers, 311 Ill.App.3d at 227, 243 Ill.Dec. 512, 723 N.E.2d 815. The plaintiff was injured when an unevenly loaded wheelbarrow fell on him. Melchers, 311 Ill. App.3d at 227, 243 Ill.Dec. 512, 723 N.E.2d 815. In finding that the excavation subcontractor had a duty to protect the plaintiff, we noted that a person "`engaged in the construction of a building owes to another not in his employ, engaged in the same work and exercising due care for his own safety, the duty of using reasonable care to avoid injuring him.'" Melchers, 311 Ill.App.3d at 229, 243 Ill.Dec. 512, 723 N.E.2d 815, quoting Ziraldo v. W.J. Lynch Co., 365 Ill. 197, 201, 6 N.E.2d 125 (1936). We then noted that the evidence showed that the excavation subcontractor furnished all the tools used to dig the trenches, including the wheelbarrow that injured the plaintiff, and allowed the plaintiff to use the same tools when further digging became necessary. Melchers, 311 Ill.App.3d at 230, 243 Ill.Dec. 512, 723 N.E.2d 815. This evidence led us to conclude that the excavating subcontractor had a duty to protect the plaintiff against injury from its equipment. Melchers, 311 Ill.App.3d at 230-31, 243 Ill.Dec. 512, 723 N.E.2d 815.
The extensive interaction that gave rise to a duty in Melchers is not present here. Pinner and Lyons were not involved in the same work as Raymond. Pinner and Lyons were hired separately by Borden to perform electrical work, while Scheck was hired to perform routine maintenance. The record shows that the subcontractors did not work in conjunction with each other or that they were even in the same area like the subcontractors in Melchers. Raymond's isolated use of a ladder belonging to either Pinner or Lyons is insufficient to give rise to a duty under a Melchers analysis.
Were we to agree with Raymond that Melchers imposed a duty on Pinner and Lyons to protect Raymond against unsafe equipment, Raymond's claim would still fail. It is undisputed that the ladder itself was not unsafe. The ladder became unsafe when coated by resin in Borden's plant. Raymond introduced no evidence that either Pinner or Lyons furnished a resin-coated ladder for Raymond's use. *718 The evidence instead suggests that the ladder became coated with resin after Scheck secured it in place in the pump room for several weeks before the accident. Summary judgment for Pinner and Lyons was proper.
We affirm summary judgment for Pinner and Lyons. The grant of summary judgment for Borden is reversed, and the matter is remanded for further proceedings. The order striking the Puchalski affidavit is affirmed.
Affirmed in part and reversed in part; cause remanded.
McBRIDE, P.J., and BURKE, J., concur.