2015 IL App (4th) 140512

NO. 4-14-0512

**FILED**
March 16, 2015
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| RICHARD R. LUCASEY, | ) | Appeal from |
|        Plaintiff-Appellant, | ) | Circuit Court of |
|        v. | ) | Sangamon County |
| RONALD PLATTNER and MAUREEN PLATTNER, | ) | No. 13L4 |
|        Defendants-Appellees. | ) | |
| | ) | Honorable |
| | ) | Peter C. Cavanagh, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Presiding Justice Pope and Justice Turner concurred in the judgment and opinion.

**OPINION**

¶ 1         In January 2013, plaintiff, Richard R. Lucasey, sued defendants, Ronald Plattner and Maureen Plattner, for injuries plaintiff received after falling from a retaining wall in defendants' backyard while he was performing a real-estate appraisal of defendants' property. In July 2013, defendants moved for summary judgment, arguing that plaintiff's negligence claims were precluded because (1) the retaining wall was an open-and-obvious hazard and (2) neither the "distraction" exception nor the "deliberate encounter" exception to the open-and-obvious doctrine applied. In May 2014, the trial court granted summary judgment for defendants.

¶ 2         Plaintiff appeals, arguing that the trial court erred by (1) striking the affidavit of plaintiff's purported expert in architecture and building codes and (2) granting summary judgment for defendants because (a) the question of whether the retaining wall was an open-and-

obvious hazard was for the jury to decide and (b) even if the hazard was open and obvious, the "distraction" and "deliberate encounter" exceptions to the open-and-obvious doctrine applied. We disagree and affirm.

¶ 3                                    I.  BACKGROUND

¶ 4        The following undisputed facts—which we have gleaned from the parties' pleadings, affidavits, depositions, and other supporting exhibits—are fairly straightforward.

¶ 5        At midmorning on January 24, 2011, plaintiff, a self-employed real-estate appraiser since 1980, arrived at defendants' house to conduct an appraisal.  Although defendants were aware that an appraisal would be taking place at their house that day, plaintiff had been hired by a bank and had never previously met or spoken with defendants.

¶ 6        After introducing himself to Maureen at the front door, plaintiff walked to his left around the west side of the house and toward the backyard.  Along the way, plaintiff measured the exterior dimensions of the house with a tape measure.  Upon entering the backyard from the west, plaintiff observed the following retaining wall running north from the back of the house, as pictured in the following photographic exhibit:



Unlike what is shown in the above exhibit, however, both the ground and the top of the retaining wall were covered in heavy snow at the time of plaintiff's accident. The sky was clear and the sun was shining.

¶ 7        Plaintiff needed to measure the entire back side of the house. After measuring the distance from the west side of the house to the retaining wall, plaintiff walked around the retaining wall and up the incline toward the house. Plaintiff hooked the end of his measuring tape onto an attached deck and began walking toward the retaining wall. Because snow cover made it difficult for plaintiff to use his depth perception to discern the top edge of the retaining wall, plaintiff walked very slowly as he made his measurement. While slowly and carefully walking sideways in a scissor-like fashion, plaintiff was simultaneously looking for the edge of the retaining wall and making sure that his measuring tape was level. Plaintiff stepped off the top of the retaining wall and fell approximately 5 1/2 feet onto the ground below, suffering a compression fracture in his back.

¶ 8    In his January 2013 complaint, plaintiff alleged that his injury was caused by defendants' negligence.  Specifically, plaintiff alleged, in pertinent part, that defendants breached their duty of ordinary care by (1) failing to provide a guard or other barrier along the top of the retaining wall, as required under the International Building Code, (2) failing to warn of the drop-off at the top of the retaining wall, and (3) allowing the retaining wall to remain without a guard or other barrier when it was reasonably foreseeable that plaintiff would (a) be distracted by his appraisal work and (b) encounter the dangerous condition in order to complete his appraisal work.

¶ 9    In their July 2013 motion for summary judgment, defendants argued that (1) the risk posed by the retaining wall was open and obvious and (2) neither the distraction nor the deliberate-encounter exception to the open-and-obvious doctrine applied.

¶ 10    In response to defendants' motion for summary judgment, plaintiff filed an affidavit completed by James Peterson, a licensed architect and structural engineer.  After describing his experience and qualifications, the remainder of Peterson's affidavit stated, in its entirety, as follows:

"4.  That I have reviewed the complaint, and the documents attached to the summary judgment pleadings, including photos of the retaining wall, and deposition transcripts of [plaintiff] and [defendants], and I have reviewed the building and residential codes.

5.  That it is my opinion, to a reasonable degree of architectural and engineering certainty, that the retaining wall

should have had a barrier at least 36" on the high side (deck side) of the retaining wall.

6. That the basis of my opinion is that the drop from the high side to the low side (patio side) of the retaining wall, is greater than 30" above grade, resulting in a hazardous condition.

7. That it is my opinion, to a reasonable degree of architectural and engineering certainty, that the following Code sections were violated in this case:

International Residence Code,

section R202, and R312.1;

International Building Code, sections

202, 1002, 1003.2.12, and 1013.1."

We note that Peterson did not attach to his affidavit any of the pleadings, documents, exhibits, deposition transcripts, or building codes that he purportedly relied upon.

¶ 11 Defendants moved to strike Peterson's affidavit on the grounds that the building-code provisions Peterson cited (1) did not apply to structures like the retaining wall in this case and (2) were not provided in discovery.

¶ 12 In May 2014, the trial court granted defendants' (1) motion for summary judgment and (2) motion to strike Peterson's affidavit. (Although the court held a hearing on those motions in April 2014, the record includes no transcript of that hearing.) In granting summary judgment, the court found that the evidence established "the retaining wall was open and obvious as a matter of law." The court further found that (1) the distraction exception to the open-and-

obvious doctrine did not apply because plaintiff testified that he knew the wall was there and (2) plaintiff failed to establish a breach of any duty on the part of defendants.

¶ 13　　　　　This appeal followed.

¶ 14　　　　　　　　　　　　　　II.  ANALYSIS

¶ 15　　　　　Plaintiff argues that the trial court erred by (1) striking Peterson's affidavit and (2) granting summary judgment because (a) the question of whether the retaining wall was an open-and-obvious hazard was for the jury to decide and (b) even if the hazard was open and obvious, the "distraction" and "deliberate encounter" exceptions to the open-and-obvious doctrine applied. We address plaintiff's arguments in turn.

¶ 16　　　　　　　　　　　　A.  Peterson's Affidavit

¶ 17　　　　　Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) provides, in pertinent part, as follows:

> "Affidavits in support of and in opposition to a motion for
> summary judgment *** shall be made on the personal knowledge
> of the affiants; shall set forth with particularity the facts upon
> which the claim, counterclaim, or defense is based; *shall have*
> *attached thereto sworn or certified copies of all documents upon*
> *which the affiant relies*; shall not consist of conclusions but of facts
> admissible in evidence; and shall affirmatively show that the
> affiant, if sworn as a witness, can testify competently thereto."
> (Emphasis added.)

¶ 18　　　　　"[W]hen the trial court rules on a motion to strike a Rule 191 affidavit in

- 6 -

conjunction with a summary judgment motion, we review *de novo* the trial court's ruling on the motion to strike." *Jackson v. Graham*, 323 Ill. App. 3d 766, 774, 753 N.E.2d 525, 532 (2001). Although the trial court in this case did not explain its reasoning for striking Peterson's affidavit, we note that "this court reviews the judgment, not the reasoning, of the trial court, and we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct." *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24, 984 N.E.2d 132.

¶ 19        As noted, Peterson failed to attach to his affidavit any sworn or certified copies of the documents upon which he relied. In *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335, 775 N.E.2d 987, 994 (2002), the supreme court explained that "[a]n affidavit submitted in the summary judgment context serves as a substitute for testimony at trial." Given this purpose, "it is necessary that there be *strict compliance* with Rule 191(a) 'to insure that trial judges are presented with valid evidentiary facts upon which to base a decision.' " (Emphasis added.) *Id.* at 336, 775 N.E.2d at 994 (quoting *Solon v. Godbole*, 163 Ill. App. 3d 845, 851, 516 N.E.2d 1045, 1049 (1987)).

¶ 20        The *Robidoux* court rejected the argument that the same standard applicable to an expert's trial testimony—namely, that an expert testifying at trial may rely upon facts not in evidence—should apply to an expert's affidavit in the summary judgment context. The court explained that the Rule 191(a) requirement of attaching the documents upon which the expert relied to the affidavit "is inextricably linked to the provisions requiring specific factual support in the affidavit itself. It is not a mere technical requirement." *Id.* at 344, 775 N.E.2d at 998. Instead, were the court to relax the attached-documents requirement of Rule 191(a), the court

"would be lowering the bar and allowing the avoidance of summary judgment whenever a party is able to produce an expert to support its position." *Id*.

¶ 21 Plaintiff argues that Peterson's affidavit was sufficient because (1) the documents Peterson relied upon—although not actually attached to Peterson's affidavit— were included elsewhere in the record and (2) the building codes Peterson relied upon were publicly available. Plaintiff also contends that affidavits in opposition to summary judgment are to be liberally construed. Finally, citing *Streams Club, Ltd. v. Thompson*, 180 Ill. App. 3d 830, 836, 536 N.E.2d 459, 462 (1989)—a Second District case that predates *Robidoux*—plaintiff asserts that "technical deficiencies" do not render affidavits improper because "substance, and not form, controls." We emphatically reject all of these arguments, which run directly contrary to the strict-compliance requirement of *Robidoux*.

¶ 22 Although it is true that a court reviewing a grant of summary judgment "must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the nonmoving party" (*Pekin Insurance Co. v. Precision Dose, Inc.*, 2012 IL App (2d) 110195, ¶ 29, 968 N.E.2d 664), this "liberal construction" requirement does not apply to the court's determination of whether the nonmoving party's affidavit complies with Rule 191(a). Instead, Rule 191(a) applies with equal force to both the moving and nonmoving parties' affidavits. If a nonmoving party's affidavit complies with Rule 191(a), we will construe the *averments contained therein* liberally in favor of the nonmoving party.

¶ 23 Given the strict-compliance requirement of *Robidoux*, we conclude that the trial court properly struck Peterson's affidavit. See *Preze v. Borden Chemical, Inc.*, 336 Ill. App. 3d 52, 57, 782 N.E.2d 710, 714 (2002) ("The failure to attach the documents is fatal."). That the

various documents Peterson failed to attach to his affidavit may be found elsewhere in this record is utterly irrelevant.

¶ 24                    B.  The Trial Court's Grant of Summary Judgment

¶ 25          Plaintiff next argues that the trial court erred by granting summary judgment because (1) a dispute of fact existed as to whether the hazard posed by the retaining wall was open and obvious and (2) even if the condition was open and obvious, the distraction and deliberate-encounter exceptions apply.  We disagree.

¶ 26                    1.  *Duty and the Open-and-Obvious Doctrine*

¶ 27          "To succeed in an action for negligence, the plaintiff must establish that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach proximately caused injury to the plaintiff."  *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 22, 980 N.E.2d 58.  The supreme court recently explained the traditional duty analysis, as follows:

"In resolving whether a duty exists, we ask whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff.  [Citation.]  Four factors guide our duty analysis: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant.  [Citations.]  The weight to be accorded these factors depends upon the circumstances of a given

case.  [Citation.]"  (Internal quotation marks omitted.)  *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 14, 21 N.E.3d 684.

"Whether a duty exists is a question of law for the court to decide."  *Id.* ¶ 13, 21 N.E.3d 684.

¶ 28        Illinois has adopted the open-and-obvious doctrine, which provides that a " 'possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them.' "  *Id.* ¶ 16, 21 N.E.3d 684 (quoting Restatement (Second) of Torts § 343A (1965)).  As the supreme court explained in *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 448, 665 N.E.2d 826, 832 (1996), "[i]n cases involving obvious and common conditions, such as fire, height, and bodies of water, the law generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such condition.  The open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks."

¶ 29        In this case, plaintiff argues that the question of whether the hazard posed by the retaining wall was open and obvious should have been decided by a jury.  Plaintiff relies upon the First District's decision in *Alqadhi v. Standard Parking, Inc.*, 405 Ill. App. 3d 14, 15, 938 N.E.2d 584, 586 (2010), in which the plaintiff tripped and fell over a three-quarter-inch-high concrete rise in the defendants' parking garage.  The defendants moved for summary judgment, arguing that the condition was open and obvious.  *Id.*  In response, the plaintiff cited her deposition testimony that (1) the color similarity between the low and high concrete surfaces created an optical illusion of a flat walking surface and (2) the lighting was poor.  *Id.*  The plaintiff also provided an engineer's affidavit that stated, in part, " '[t]he lack of contrast between

- 10 -

the surface of the parking level and the curb ramp *** disguised the abrupt change in vertical elevation.' " *Id.* at 16, 938 N.E.2d at 586. The trial court granted summary judgment for the defendants, concluding that the condition was open and obvious. *Id.* The First District reversed, reasoning as follows:

"Normally where there is no dispute about the physical nature of the condition, the question of whether a condition is open and obvious is a legal one for the court. [Citation.] But, where there is a dispute about the condition's physical nature, such as its visibility, the question of whether a condition is open and obvious is factual. [Citation.] Where a court cannot conclude as a matter of law that a condition poses an open and obvious danger the obviousness of the danger is for the jury to determine. [Citation.]" (Internal quotation marks omitted.) *Id.* at 17-18, 938 N.E.2d at 587-88.

¶ 30    We find the facts of *Alqadhi* easily distinguishable from the facts in this case. In *Alqadhi*, the defendants argued on summary judgment that the rise in elevation on the concrete surface was open and obvious. In response, the plaintiff presented evidence that the conditions—namely, the poor lighting and lack of visual contrast between the low and high concrete surfaces—prevented her from knowing that a potentially hazardous condition *even existed*. Because the plaintiff in *Alqadhi* arguably did not know that a dangerous condition existed, she had no opportunity to "appreciate and avoid" the risk. *Bucheleres*, 171 Ill. 2d at 448, 665 N.E.2d at 832. In other words, an *actual dispute* existed as to whether the condition was

- 11 -

open and obvious.

¶ 31     In this case, however, it is undisputed that when plaintiff walked onto the patio area behind the house, he saw the broad side of the retaining wall (which was not covered in snow) and appreciated that a fall from the top of the retaining wall could result in injury. The potential hazard was undisputedly open and obvious to plaintiff at that time. Appreciating that a fall from the retaining wall might cause injury, plaintiff nonetheless walked up the incline on the high side of the retaining wall, putting himself in a position that made it more difficult to distinguish the top of the retaining wall from the patio below. According to plaintiff, the uniform snow cover visually blended the high and low sides of the retaining wall into a seamless field of bright white. But plaintiff had seen the retaining wall and knew the hazard was still there. It was his responsibility to "take care to avoid any danger inherent in such condition." *Id.*

¶ 32     Knowing that the drop-off was just to his right, plaintiff chose to proceed with his measurements. He took some precautions, including walking very slowly and periodically looking down for the edge of the retaining wall. Plaintiff did not take steps to address the visibility problem, however, such as brushing some snow off the top of the retaining wall to make the edge easier to see, or placing an object on the retaining wall as a visual marker. The open-and-obvious doctrine assumes "that people encountering potentially dangerous conditions that are open and obvious will appreciate *and avoid* the risks." (Emphasis added.) *Alqadhi*, 405 Ill. App. 3d at 17, 938 N.E.2d at 587. In *Alqadhi*, the conditions made the plaintiff unable to appreciate the risk, much less avoid it. In this case, on the other hand, plaintiff appreciated the risk but failed to exercise reasonable care for his own safety to avoid injury. Accordingly, the disputed issue that precluded summary judgment in *Alqadhi* is not present in this case.

- 12 -

¶ 33                                    2. *The Distraction Exception*

¶ 34          Plaintiff further argues that even if the condition was open and obvious, the

distraction exception to the open-and-obvious doctrine applies. Specifically, plaintiff contends

that he was "distracted by the task of having to measure the back of defendants' house, which

was made necessary by defendants' need and desire to sell their house."

¶ 35          The distraction exception essentially holds that even an open-and-obvious

condition may still be *unreasonably* dangerous if the landowner should have foreseen that people

would fail to notice or protect themselves against the condition because they had become

distracted. See *Ward v. K mart Corp.*, 136 Ill. 2d 132, 152, 554 N.E.2d 223, 232 (1990) ("The

inquiry is whether the defendant should reasonably anticipate injury to those entrants on his

premises who are generally exercising reasonable care for their own safety, but who may

reasonably be expected to be distracted, as when carrying large bundles, or forgetful of the

condition after having momentarily encountered it.").

¶ 36          We conclude that the distraction exception does not apply in this case because

defendants could not have reasonably anticipated that plaintiff would become distracted to the

point of being unable to protect himself against the dangers posed by the retaining wall.

Notably, plaintiff was in complete control of his purported distraction. As he used his tape

measure to perform his task, he literally held the distraction in his hands. In that moment,

plaintiff had "taken the reins" of his own situation—so to speak—and only he could reasonably

be expected to protect his own safety. In *Bruns*, the supreme court approvingly cited the

following rule:

              " 'A plaintiff should not be allowed to recover for self-created

distractions that a defendant could never reasonably foresee.  In order for the distraction to be foreseeable to the defendant so that the defendant can take reasonable steps to prevent injuries to invitees, the distraction should not be solely within the plaintiff's own creation.  The law cannot require a possessor of land to anticipate and protect against a situation that will only occur in the distracted mind of his invitee.' " *Bruns*, 2014 IL 116998, ¶ 31, 21 N.E.3d 684 (quoting *Whittleman v. Olin Corp.*, 358 Ill. App. 3d 813, 817-18, 832 N.E.2d 932, 936 (2005)).

Even if defendants should have anticipated that plaintiff would be conducting measurements near the retaining wall, it was not reasonably foreseeable that plaintiff—an experienced real-estate appraiser—would be unable to complete his measurements without falling off the retaining wall.

¶ 37  Further, plaintiff's own deposition testimony established that he was not "distracted" as that term has been used in the context of an open-and-obvious hazard.  Plaintiff testified about what he was doing just before he fell, as follows:

"[DEFENSE COUNSEL]:  What happened as you approached the retaining wall?

[PLAINTIFF]:  I was trying to find the retaining wall.  Everything was covered with snow.

[DEFENSE COUNSEL]:  Right.

[PLAINTIFF]:  I'm just trying to find it, and it was like I have no depth perception at all.

***

[DEFENSE COUNSEL]:  What happened next?

[PLAINTIFF]:  Walking slowly, because, you know, there was snow on the ground.  As I get toward the retaining wall, where I think the retaining wall was, I'm slowing down.  Very slowing [*sic*].  ***

I'm making sure the tape is level and the tape is straight because you are appraising.  You can get off 3 foot [*sic*] in any direction, and I have liability in this.

So I went over, and I'm trying to find *** the top of the retaining wall.  I never did find it.

[DEFENSE COUNSEL]:  Why is that?

[PLAINTIFF]:  I stepped over the edge into air space."

¶ 38    Plaintiff's own testimony established that his inability to find the edge of the retaining wall was not caused by a "distraction," but by natural conditions—namely, snow cover and bright sunlight.  Although plaintiff's attention was perhaps divided between keeping his tape measure level and looking for the retaining wall, he was not *distracted* in the sense that he (1) failed to appreciate the hazard or (2) forgot to protect himself against the danger.  On the contrary, he was actively looking for the drop-off when he fell.  His simple inability to *see* the drop-off does not constitute a "distraction" as that term has been used and understood in the context of open-and-obvious conditions.

¶ 39                          3. *The Deliberate-Encounter Exception*

- 15 -

¶ 40		Last, plaintiff contends that the deliberate-encounter exception to the open-and-obvious doctrine applies because plaintiff reasonably proceeded through his measurements, despite the known danger, due to the economic necessity that he complete his appraisal. We are not persuaded.

¶ 41		Under the deliberate-encounter exception to the open-and-obvious doctrine, "harm may be reasonably anticipated when the possessor 'has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.' " *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 391, 706 N.E.2d 441, 448 (1998) (quoting Restatement (Second) of Torts § 343A, cmt. f 220 (1965)). "[T]his exception has most often been applied in cases involving some economic compulsion, as where workers are compelled to encounter dangerous conditions as part of their employment obligations ***." *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 725-26, 935 N.E.2d 644, 656 (2010). "The focus with the deliberate[-]encounter analysis is on what the possessor of land anticipates or should anticipate the entrant will do." *Grillo v. Yeager Construction*, 387 Ill. App. 3d 577, 596, 900 N.E.2d 1249, 1268 (2008).

¶ 42		In this case, plaintiff was hired by a bank to conduct an appraisal of defendants' property. Plaintiff chose the time of his appraisal and the manner in which he conducted it. Even if defendants should have known that an appraisal required taking measurements of the exterior dimensions of the house, it was not reasonably foreseeable that such a task could *only* be completed by risking a fall off the retaining wall. As already mentioned, common sense suggests that plaintiff could have easily taken some small precautions to avoid the risk of falling, such as

- 16 -

brushing snow off the top of the retaining wall so that the edge was more visible. The cases in which courts have applied the deliberate-encounter exception almost always involve a plaintiff forced to make a choice between either facing the danger or neglecting his duties. See, *e.g.*, *LaFever*, 185 Ill. 2d at 392, 706 N.E.2d at 448 (the deliberate-encounter exception applied when the defendant company knew that the plaintiff could perform his job only by walking over a surface covered in a slippery substance); *Rusch v. Leonard*, 399 Ill. App. 3d 1026, 1036, 927 N.E.2d 316, 326 (2010) (the deliberate-encounter exception applied when the plaintiff, a fireman carrying an injured person, fell down an obviously unsafe staircase because that staircase was the only means of getting to the injured person); *Preze*, 336 Ill. App. 3d at 59, 782 N.E.2d at 716 (deliberate-encounter exception applied when the plaintiff could perform his job only by climbing a ladder that was covered in slippery resin generated by the defendant's factory). The circumstances of this case simply do not fit within recognized understandings of the deliberate-encounter exception.

¶ 43                    4. *Defendants Owed Plaintiff No Duty*

¶ 44        The undisputed evidence in this case establishes that (1) the condition was open and obvious as a matter of law and (2) no exception to the open-and-obvious doctrine applies. We note, however, that "[t]he existence of an open and obvious danger is not an automatic or *per se* bar to the finding of a legal duty on the part of a defendant." *Bruns*, 2014 IL 116998, ¶ 19, 21 N.E.3d 684. Instead, " '[i]n assessing whether a duty is owed, the court must still apply traditional duty analysis to the particular facts of the case.' " *Id.* (quoting *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 425, 706 N.E.2d 460, 463 (1998)). "Application of the open and obvious rule affects the first two factors of the duty analysis: the foreseeability of injury, and

the likelihood of injury. [Citation.] Where the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Id.*

¶ 45 In this case, plaintiff argues that the remaining two factors of the duty analysis—the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendants—weigh in his favor. Specifically, plaintiff contends, "all that defendants had to do was to place a fence, bushes, or some kind of barrier or guard next to the top of the retaining wall, and no injury would have occurred." We reject plaintiff's argument, however, because the foreseeability and likelihood of injury was far too remote to justify placing a burden on defendants to anticipate, much less incur expense to prevent, the type of accident that occurred here. Under the facts of this case, "[t]he imposition of this burden is not justified[,] given the open and obvious nature of the risk involved." *Id.* ¶ 36, 21 N.E.3d 684.

¶ 46 Accordingly, because defendants owed no duty to plaintiff, the trial court properly granted defendants' motion for summary judgment.

¶ 47 III. CONCLUSION

¶ 48 For the reasons stated, we affirm the trial court's judgment.

¶ 49 Affirmed.